## WARFIELD v. WARFIELD.

### No. 11328.

Court of Civil Appeals of Texas. Galveston.

March 19, 1942.

Louis J. Dibrell, of Galveston, for appellant.

Charles W. Gill, of Galveston, for appellee.

GRAVES, Justice.

This appeal is from a judgment of the 10th District Court of Galveston County, sitting without a jury, granting the appellee a divorce from the appellant on the ground of cruel treatment. Other than as in the judgment recited, the learned trial court stated no findings of either fact or law, nor were any requested by either side.

The decree itself merely runs to the purport that "the court being of the opinion that the material allegations in plaintiff's (appellee's) petition are true;

"It is, therefore, Ordered, Adjudged and Decreed by the Court that the bonds of matrimony heretofore existing between said plaintiff, Benjamin Merritt Warfield, and said defendant, Yvonne Beckner Warfield, be and the same are hereby annulled and dissolved, and that the said plaintiff be and he is hereby divorced from the said defendant on the grounds of cruel treatment."

The wife, as such defendant below, appearing above as appellant, inveighs against

the determination so adverse to her below upon these two points:

"I. Appellee failed to establish by full and satisfactory evidence that he had been an actual bona fide inhabitant of the State of Texas for a period of twelve months next prior to the time of the exhibition of his petition, and that he had resided in Galveston County, Texas, for more than six months next preceding the filing of his suit for divorce, as required by Article 4631 of the Revised Civil Statutes of the State of Texas, Vernon's Ann.Civ.St. Art. 4631.

"II. Appellee failed to establish by full and satisfactory evidence the existence of the grounds for divorce alleged in his petition and upon which he relied."

■ After a painstaking consideration of the record, especially the full statement of facts brought up with it, the first quoted point is overruled, upon the conclusion that the venue was properly alleged and sufficiently proven.

Appellant's sole dependence for authority in support of her contention to the contrary upon this question of venue, and consequent jurisdiction of the court to then entertain the suit, Gallagher v. Gallagher, Tex.Civ. App., 214 S.W. 516, is thought to be clearly distinguishable upon the facts from those shown here; that is, in the Gallagher case there was no manifestation that the husband—who, in that instance, was a somewhat peripatetic United States army officer, like the appellee was in this case— intended to make San Antonio his residence, nor that he had done any act to indicate that he intended to do so; nor did he testify that he had ever, prior to instituting his suit for divorce, made any declarations to any person that he intended to make San Antonio his home, hence, of course, there had been no corroboration of what, if it existed at all, had been a purely subjective purpose on his part to reside there, and that appears to have been to take effect only after he got out of the army at a later date.

Whereas, the appellee here testified that he had, several days subsequent to his arrival in Galveston after his army assignment there had become effective, concluded that he liked the town, and then and there decided that he would make it a place of residence. He was shown by the uncontroverted testimony of a number of corroborating witnesses, most of them his fellow-officers and associates in the army, others being people with whom he did business, to have stated to them that he had adopted and intended to maintain Galveston as his residence; that he proceeded at that very time to make it so, rented an apartment there, for which he bought furniture, and married the appellant, establishing the home wherein they had lived as husband and wife for one whole year before he exhibited his petition for divorce in this suit.

Under the rule subsequently enunciated by the same court that had decided the cited Gallagher case, it is held that these differing conditions constituted a sufficient compliance with R.S. Article 4631. That court, in the ensuing case of Morehouse v. Morehouse, Tex.Civ.App., 111 S.W.2d 831, 833, upon the legal equivalent of the same state of facts, thus in effect so held: "The record in this cause shows that A. B. Morehouse came to Bexar county, Tex., more than one year before the divorce suit was filed. If at the time of his moving to Texas it was his intention to make his permanent domicile here, we are of the opinion he could do so. His living in Bexar county after retirement is some proof of that intention. The opinion in Gallagher v. Gallagher, Tex.Civ.App., 214 S.W. 516, points out that a soldier can abandon his domicile or origin and select another."

■ An examination of the evidence relating to point two, however, convinces this court that it was not sufficiently full and satisfactory to warrant this divorce to the husband as for cruel treatment by the wife, as required by R.S. Article 4629. Indeed, when this evidence is subjected to the search required of this court for itself by that statute, it is concluded that the most that appears therefrom is the reflection of such petty quarrellings, misunderstandings, divergent habits, and temperamental incompatibilities, as amounted in toto to only those "trivial matters or disagreements" the Supreme Court held in McCullough v. McCullough, 120 Tex. 209, 36 S.W.2d 459, 463, did not warrant the granting of a divorce.

In fact, there is no testimony whatever in this record even tending to indicate any cruel treatment of this husband by his wife other than his own uncorroborated narration of the personal and mutual differences, incompatibilities, and distinctive attitudes of mind between them that in law got no further than to establish the

mere trivialities so ruled upon; for instance, he himself admitted that most, if not all, of his alleged visitations from his wife's side had been provoked by himself, that such differences were mutually indulged in between them, and that the whole turmoil, arguments, and difficulties had probably been just as much his own fault as hers; he even conceded that their first big argument, which occurred just a few months after their marriage, had ensued over his refusal to admit that he loved his wife, in response to her persistent inquiries on that subject. His testimony on that phase being in part and in substance this:

"Q. During the occasions you have referred to, did you give Mrs. Warfield any cause to treat you in the manner you have described? A. Yes, on a number of occasions, I realize that she was rightfully angry at me, but at the same time, I didn't enjoy the way she expressed her anger.

"Q. You state that the first big argument, you all had words as a result of your refusing to admit that you loved her? A. It wasn't my language. It was the fact that I refused to state something that I didn't believe. I didn't. That was all.

"Q. At that time you didn't love her and stated in effect that you didn't, or refused to admit that you did? A. I refused to state anything, and she kept insisting that I answer her one way or another.

"Q. Did you in fact love her at that time? A. No, sir.

"Q. And that was the cause of the first big argument? A. Yes, sir.

"Q. As a matter of fact, these difficulties between you and your wife flow largely from the fact that you don't love your wife and haven't loved her since shortly after you were married, and that you have given her so to understand? A. I don't know what she understood.

"Q. You made it rather plain on the occasion of the first argument? A. I refused to say anything, and that was the reason for the argument.

"Q. And, since that situation has become apparent, you and your wife have been living in a continual turmoil, arguments, and difficulties? A. Yes, sir.

"Q. Isn't this thing just as much your fault as it is hers? A. I expect that it probably is. It is a hard thing to lay blame in something like this."

It would serve no useful purpose to further catalog nor even make a resume of the remaining body of the testimony; suffice it to say that, as indicated, there is no doubt that such was its ultimate purport, character, and effect. There is utterly no evidence that this husband was visited by his wife with any such studied series of insults, false accusations, physical violence, or mental torture, as made insupportable their longer living together as husband and wife; rather, it appears that, had he ceased his admitted habits of gambling and drinking and remaining away from home, the superstructure of his complained-of actions against her would probably have vanished into thin air, whether or not the residue had been the mutual respect, affection, and cooperation that might have salvaged the fruits of a happy marriage for either party.

In other words, the misconduct he charged against her, as to none of which was his testimony, which stood alone, corroborated, as indicated supra, was clearly if not admittedly either provoked or equaled in kind by his toward her.

In such circumstances, no divorce for cruel treatment is obtainable by either side, under our holdings. Aylesworth v. Aylesworth, Tex.Civ.App., 292 S.W. 963; Burns v. Burns, Tex.Civ.App., 76 S.W.2d 821-823; Lawson v. Lawson, Tex.Civ.App., 293 S.W. 336; Jasper v. Jasper, Tex.Civ. App., 2 S.W.2d 468.

Especially is there material similarity between the facts here and those in Burns v. Burns, supra. In fact, this appellant as a witness, although admitting most of the happenings arrayed against her by the appellee, not only denied her own responsibility or blame therefor, but squarely placed them upon him; and he, in turn, as already indicated, admitted that he was probably as much to blame as she.

Moreover, he made no effort whatever either to establish corroboration of any of his accusations, or to impeach her as a witness; he did not even cast reflections upon her womanly integrity, nor in any respect attempt to show that he was more entitled to belief than she.

It follows from these conclusions that the judgment cannot stand; it will therefore be reversed and the cause for divorce rendered in appellant's favor.

Reversed and rendered.