**STRUBLE v. STRUBLE.**

No. 5624.

Court of Civil Appeals of Texas. Amarillo.

Dec. 23, 1943.

Simpson, Dorenfield & Fullingim, of Amarillo, for appellant.

HEARE, Justice.

This is a suit for divorce on the ground of abandonment, filed by appellant September 7, 1943. He alleged that he was and had been an actual bona fide inhabitant of the State of Texas for twelve months and more next immediately preceding the time of the filing and exhibiting of his petition and that he was and had been a resident of Potter County, Texas, for more than six months next immediately preceding the date of filing and exhibiting said petition. Appellant further alleged that he and appellee were married October 20, 1937, at Elkton, Maryland; that without fault or cause on his part appellee voluntarily left

his bed and board with the intention of abandoning and did completely abandon the plaintiff during the month of January, 1938; that said abandonment has been continuous for more than three years and in fact for the more than five years that have elapsed since January, 1938. Appellant alleged that no children were born to the marital union and that there were no property rights to be settled between the parties. Appellant alleged under oath that the whereabouts of appellee were unknown to him and also affirmatively alleged under oath that she is a non-resident of the State of Texas and prayed for citation by publication. Appellant specifically alleged that he is in the military service of the United States and that defendant is not.

After sufficient citation of appellee by publication, she made no personal appearance and filed no pleadings. Thereupon the trial court appointed Honorable Tom Seay, a practicing attorney before the court, attorney ad litem to represent the absent defendant and he filed a general denial on her behalf. On November 17, 1943, the court proceeded to the trial of the case without the aid of a jury and on the same day entered judgment dismissing the case from the docket of the court assigning his reason to be that appellant had failed to show by full and satisfactory evidence he possessed the legal qualifications required by Article 4631 of the 1925 Revised Civil Statutes of Texas, Vernon's Ann. Civ.St. art. 4631, to entitle him to file and maintain the suit. The court recited in the decree that had appellant shown the necessary legal qualifications above referred to he would have been entitled to a decree of divorce on the ground of three years' statutory abandonment as provided in Section 2 of Article 4629, R.C.S. 1925. Appellant filed motion for new trial which was overruled. At appellant's request the trial court filed findings of fact and conclusions of law and the case is now properly before this court for review.

Among the findings of fact filed by the court below is the following: "4. I find that the evidence in the trial of said cause was sufficient to constitute 'full and satisfactory' evidence and proof that the plaintiff, upon the merits of the cause, would be, under the law, entitled to decree of divorce, as prayed for in his petition, upon the statutory ground alleged and proved, of separation from and abandonment of plaintiff by defendant, and leaving his bed and board, for the space of three years, if the evidence was further sufficient under the law to constitute 'full and satisfactory' evidence and proof that at the time said suit was filed, on September 7, 1943, plaintiff was, and for twelve months next immediately theretofore had been, 'an actual, bona fide inhabitant' of the state of Texas, and a resident for six months in Potter County, in said State; but I find that the evidence is insufficient to establish, and does not establish, that fact, as is hereinafter more fully shown."

The conclusions of law of the court below are:

"1. I conclude as a matter of law that the facts established by the evidence in this cause are sufficient to entitle plaintiff to a decree of divorce, insofar as the merits of the cause are concerned, upon the alleged and proven ground of defendant leaving his bed and board, with intention of permanent abandonment, for over three years.

"2. But I further conclude, as a matter of law, that under the evidence plaintiff is not entitled to divorce from defendant, because the evidence shows, and I have in my Findings of Fact, found and certified above, that plaintiff on September 7, 1943, was not, and had not been for twelve months theretofore, an actual bona fide inhabitant of the State of Texas, nor a resident for six months in Potter County, as those terms are construed under the Divorce Laws of Texas, and therefore that such cause could not be properly instituted, and could not be maintained, and should have been dismissed, as has been done."

We have carefully reviewed the entire record, which includes a complete statement of facts, and are in agreement with the trial court that appellant is entitled to a decree of divorce if he has satisfied the residence requirements of Article 4631, R.C.S. 1925, Vernon's Ann.Civ.St. art. 4631. It is therefore unnecessary to extend this opinion with quotations from or discussion of the evidence on the issue of abandonment.

Appellant complains that the trial court acted in an arbitrary manner when he accepted and gave full credence to appellant's testimony on the issue of abandonment but refused to believe appellant's corroborated testimony on the issue of residence. We do not place such a construction on the findings of the trial court. He finds as a fact and concludes as a matter of law that

the appellant has failed to establish himself as eligible under the requirements of Article 4631 to maintain the suit in a Potter County, Texas court. In other words, taking all of the testimony at its face value, the trial court has concluded that it does not meet the requirements of the law in regard to residence, and therefore the case must be dismissed. Indeed any other construction of these findings and conclusions would be anomalous. With practically no corroboration, appellant was able to convince the court of all the material allegations of his petition, including the fact of abandonment by his spouse without just cause. Appellant's veracity and general reputation as a person worthy of belief were attested to by his commanding officer, his superior non-commissioned officers and others with whom he had been associated in military life over a period of from six months to more than a year. He was shown to be an outstanding soldier and had been recommended for Officer Candidate School. Practically all of his testimony on the issue of residence was completely and fully corroborated by persons against whom there is no suspicion or reason for discredit. It would be unreasonable to conclude that the trial court would see fit to believe testimony of the interested appellant concerning the abandonment, testimony on which there is little or no corroboration from other witnesses, and yet reject testimony of the interested appellant concerning his intentions and overt acts in relation to his residence, testimony which was completely and fully corroborated by a number of disinterested witnesses. There is no indication in the court's findings that he disbelieved any witness. All were carefully cross-examined by the attorney ad litem and by the court and there was no confusion or conflict in their testimony. The reasonable construction of the trial court's findings and conclusions, therefore, must be that he found the evidence insufficient as a matter of law to show appellant possessed with the necessary residence qualifications required by Article 4631.

Appellant, however, contends that under the undisputed evidence he, as a matter of law, has shown the residence requirements of Article 4631. It therefore becomes necessary for this court carefully to review such evidence and pass upon its sufficiency as a matter of law to determine whether or not appellant was entitled to prosecute his divorce suit on its merits. After having done so, we sustain appellant's contention.

According to the record, appellant is 31 years of age; he was originally a resident of New Jersey, the present home of his parents, and was engaged in the theatrical production business in Newark for a number of years immediately prior to 1940. Early in 1940 appellant made a trip through Texas for the purpose of finding a good business location and place for financial investments. He spent a short time in Amarillo and then went to Wichita Falls, Fort Worth and Dallas. He spent about three weeks in Dallas, stopping at a downtown hotel, and while there formed the acquaintance of N. B. Doss of El Paso, who was visiting in Dallas. Appellant made known to Doss his desire and intention to find a suitable business location in Texas, particularly for a men's clothing store, and Doss attempted to interest him in his own home town. Appellant rejected El Paso as a location on the ground that he did not know anything about the language or custom of Spanish people and therefore considered it poor business policy to open a men's clothing store there. He mentioned Amarillo as a booming town. Doss testified in the case and fully corroborated appellant's statements concerning their meeting and conversations. Appellant then went on to California and later returned to New Jersey where he disposed of all his business interests.

Concerning his then intentions toward Texas he testified: "In the year 1940, when I came to Amarillo, at that time I formed the definite intention in my mind that I was going to change my domicile and come to Texas; I definitely made up my mind to do this; I was going to change my residence from my present home state of New Jersey, in 1940, and come to Texas. I decided to move to Texas in 1940, because I wanted to invest financially in a business, and I thought Texas had great opportunities. I had come through Amarillo on that trip; I did stay here a few days and look around. As early as 1940 I had made up my mind to come to Texas and live. I made some acquaintances here in Amarillo in 1940. I did like the small town atmosphere rather than the large city. I tell the court under my oath that since that time in 1940, it has been my permanent fixed intention to live in Amarillo, Texas. After I got back home in 1940, and prior to going into the military service, I

cleaned up my business interests, and I thought it was the best time to enlist in the army. That is why I did not invest in any business at that time, or attempt to follow through my idea of coming to Texas. I was subject to and registered for the draft, and I knew I would have to go into service eventually. I did dispose of my business interests after I got back home in 1940. I did go to California after I got back home in 1940, for a visit. There has never been a time since I was in Texas in 1940, and in Amarillo, when I have not had the formed, fixed and permanent intention in my mind to live in Texas permanently. There has never been such a time when I did not have this intent. When I entered the military service on the 19th of May, 1942, I intended to return to Texas and live there as soon as I was discharged. I intended to come to Amarillo, Texas and live. That has been my fixed, permanent intention ever since 1940."

Except to dispose of his business interests in New Jersey, appellant did nothing to put his intentions into effect before his entry into the military service on May 19, 1942. He volunteered for service while he was in California, his New Jersey draft board was notified of his induction, and he was sent to Fort McArthur in California. There he was given a voluntary choice of one of four states to which he would be sent for duty. He selected Texas and was sent to Sheppard Field, Texas, arriving there May 21, 1942. Except for a brief visit with his parents in New Jersey, he has been physically in Texas at all times since that date. Questioned why he chose Texas over Washington, Illinois and Florida, appellant testified; "Well, my main reason was that I intended to establish this as my home, regardless of what happened."

On arrival at Sheppard Field, appellant was assigned to the permanent party and was permitted to and did keep a room at the Kemp Hotel in Wichita Falls where he spent his nights except occasional times when his duties required him to remain at the post. During June of 1942 appellant met Mrs. Harley E. Davis in Wichita Falls. She testified as a witness for appellant and according to her testimony she was then single, keeping company with Davis and was presented to appellant by Davis. In this first conversation, Mrs. Davis, a native Texan, asked appellant what was his state and he said: "I am a Texan." He explained that he had been in Texas in 1940 and had decided to make it his state; that he was going to live in Texas when he was discharged from military service; that he particularly liked Amarillo. Later, and prior to September 6, 1942, when appellant and Davis received word they were being transferred to Amarillo Air Field appellant stated: "We are going to where I am going to live." Again, in discussing the proposed move to Amarillo, appellant stated: "That is where I am going to live after I finish the service." Mrs. Davis further testified that after the move to Amarillo, and before January 1, 1943, appellant told her he was going to make this (Amarillo) his home. She further testified that appellant had liberally contributed to the local community chest at Wichita Falls.

Shortly after ariving at Sheppard Field on May 21, 1942, appellant was assigned to the organization of which Sgt. N. B. Doss was a member. This was the same N. B. Doss appellant had met in Dallas in 1940. Doss testified that during their stay at Sheppard Field appellant discussed his intention of coming back to Texas when the war was over; that shortly after their transfer to Amarillo on September 15, 1942, appellant told him several times he had definitely made up his mind that Amarillo would be his home when the war was over. Similar testimony concerning appellant's decision was given by Lieut. Fred W. Black and Sgt. A. V. Holmes. Appellant told Holmes in January, 1943, that he intended permanently to live in Potter County, Texas.

On arrival at Amarillo Air Field, appellant was permitted to and did engage a room at the Herring Hotel in Amarillo and has occupied this room practically every night since September 15, 1942.

Late in September, 1942, appellant met Mrs. Ann Reiger, a widow, who has for a number of years maintained a residence apartment in the Herring Hotel. Their acquaintanceship ripened into close friendship and in December, 1942, they became engaged to be married, conditioned, of course, on appellant securing a divorce from appellee. Both appellant and Mrs. Reiger testified frankly and fully about their first meeting, their engagement and their plans. At the first meeting, Mrs. Reiger asked appellant where he was from

and he replied: "I am from Newark, New Jersey, but I am as good a Texan as you are." Explaining his statement, he said: "I was here in 1940; I like this country, have always made up my mind to be a Texan, and I am as good a one as you are, and I will be as good a one as you are." In connection with their engagement and prospective marriage, the matter of residence was discussed and appellant affirmed his determination to live "right here in Amarillo;" "that he intended to make this his home; that he wanted to live here."

During the early summer of 1943, Mrs. Reiger, acting for appellant, and at his request, consulted a real estate dealer about the purchase of a lot in Amarillo on which to build a home. It was determined, however, that it would be difficult, if not impossible, to build a home at this time and that prices of lots were perhaps in excess of their value, so nothing came of the interview.

Shortly after appellant was transferred to Amarillo in September, 1942, he formed the acquaintance of Abe Fefferman, a local merchant, and after several conversations they reached a tentative agreement to put in a men's clothing store in Amarillo at some future time when appellant would be free to take active charge of it. Fefferman now operates one store, but the plan and agreement was to establish another as soon as appellant could take charge of it. Fefferman indicated to appellant that it would require about $25,000 capital on the part of appellant and was assured that appellant could finance his part of the enterprise. Appellant owns no real estate and has no personal property other than bank deposits which he maintains in Amarillo.

Article 4631, R.C.S. 1925, as amended, Vernon's Ann.Civ.St., Article 4631, provides: "No suit for divorce shall be maintained in the Courts of this State unless the petitioner for such divorce shall at the time of exhibiting his or her petition, be an actual bona fide inhabitant of this State for a period of twelve (12) months, and shall have resided in the county where the suit is filed for six (6) months next preceding the filing of same. A citizen of this State who is or has been absent from this State for more than six (6) months in the military or naval service or other service of the United States or of this State, shall be entitled to sue for divorce in this State and in the county in which such person had his or her residence before entering such service." ·

In the foregoing statute pertaining to divorce the words "inhabitant," "resident" and "citizen" have substantially the same meaning. They import an actual residence as against a constructive legal residence or domicile. They each mean something more or less permanent, an abode animo manendi, a place where a person lives or has his home, to which, when absent, he intends to return, and from which he has no present purpose to depart. Dodd v. Dodd, Tex.Civ.App., 15 S.W.2d 686; 17 Amer.Jur. p. 278, Sec. 249; 106 A.L.R. 9.

As applied to our divorce laws, there are two kinds of domicile, namely, domicile of origin and domicile of choice. The former is the domicile of the person's parents, or the person on whom he is legally dependent, at the time of his birth. The latter is that place which a person chooses for himself. It has for its true basis or foundation the intention of the person. 28 C.J.S., Domicile, § 4 et seq., p. 10 et seq.

"Domicile of choice is entirely a question of residence and intention, or, as it is frequently put, of factum and animus. To constitute such a domicile, or to effect a change of domicile, there must appear both an actual residence in a particular locality and an intention to remain there or to make it one's home, or, as frequently stated, the fact of residence and the intent to remain must concur, or be coupled or be found together * * *. As soon as a point of time is reached when residence and intent concur, the domicile is obtained. It is not necessary that the intention to acquire a new domicile should exist at the time of removal, as the animus manendi may be formed afterward." 28 C.J.S., Domicile, p. 11, § 9.

While ordinarily the domicile of a soldier is not changed or lost by his entry into military service, where he is subject to being sent and often is sent under orders to a different post, yet, a new domicile may be acquired by a soldier as well as by a civilian if both the fact and the intent concur. Warfield v. Warfield, Tex.Civ. App., 161 S.W.2d 533; Morehouse v. Morehouse, Tex.Civ.App., 111 S.W.2d 831; Kankelborg v. Kankelborg, 199 Wash. 259, 90 P.2d 1018; Ex parte White, D.C., 228

F. 88; Trigg v. Trigg, 226 Mo.App. 284, 41 S.W.2d 583.

In the case of Gallagher v. Gallagher, 214 S.W. 516, 519, the action of the trial court in granting appellee a divorce was reversed by the Court of Civil Appeals at San Antonio on the ground that appellee had not shown himself possessed of the qualifications required by the residence statute. Appellee was an army captain stationed at Fort Sam Houston and the only evidence of residence presented by him was the fact that he had been physically present in Bexar County for shortly more than a year and he testified at the time of the trial that for about 18 months he had had the intention of making San Antonio his home. The case is distinguishable from the case at bar on the facts. Judge Fly significantly states in the opinion that appellant's statement of intention or determination was not supported or corroborated by a single fact in the record, not even by a declaration to that effect. He had made no preparation for obtaining a home and had never stated to any one that he intended to live there.

And on motion for rehearing, Chief Justice Fly states: "The fact that appellee has been in Bexar County for more than a year furnishes no corroboration to his testimony, as he has been living here because so ordered by his superior officers and not of his own volition. *And to no human being has he even whispered, 'This is my home.'*" (Emphasis ours)

The rule is recognized in the Gallagher case that a military officer, as well as any other, may abandon his domicile of origin and select another. This rule is again recognized and put into effect in the case of Morehouse v. Morehouse, 111 S.W.2d 831, later decided by the same court. In that case an attack was made on a judgment of divorce on the ground that the plaintiff had not satisfied the residence requirements. The court held that a soldier has the right to change his domicile and that the combination of intention and overt act on the part of Morehouse had been sufficiently shown.

In the recent case of Warfield v. Warfield, 161 S.W.2d 533, decided by the Galveston Court of Civil Appeals, we find a set of facts quite similar to the case at bar. Appellee there testified that he had, several days subsequent to his arrival in Galveston, after his army assignment there had become effective, concluded that he liked the town, and then and there decided he would make it a place of residence. His statements of intention were corroborated by a number of fellow officers and associates in the army. He rented an apartment and married and lived in the apartment for one whole year before filing suit for divorce. The court held this sufficient to establish residence and to meet the requirements of Article 4631.

In the case at bar appellant by uncontradicted testimony has long held the intention of making Texas his home. Upon being given a voluntary choice, he selected Texas over three other states for military service; on arrival in Texas he engaged and occupied a hotel room off the post at Wichita Falls; he declared to witnesses that he was a Texan; he contributed liberally to local charity; and on being transferred to Amarillo he again engaged and occupied a room in a local hotel during such time as his post duties would permit; he made tentative plans for business investment and active personal management of the business; he entered into an engagement of marriage with the express understanding that the home of himself and his prospective spouse would be maintained in Amarillo.

The trial court, in his findings, declines to give legal weight to appellant's declarations concerning residence made between May 19, 1942, and September 15, 1942 (the date on which he was transferred to Amarillo), assigning as a reason that it was entirely unaccompanied by any evidence of any overt act to support or manifest such intention. The fact that appellant sold his business interests in New Jersey would be a circumstance to show an intention to make a change of domicile. His voluntary selection of Texas, a very unusual option for a man in military service, his occupying a room off the post at Wichita Falls, his liberal contribution to the local community chest at Wichita Falls, are all occurrences, none of which, standing alone, nor even all taken together, in the absence of intent, would be sufficient to effect a change of residence, yet they are circumstances that must be considered in connection with appellant's positive, openly declared and corroborated expressions of intention.

Likewise, the trial court declined to give legal weight to appellant's often repeated and fully corroborated expressions,

of intentions concerning residence between the dates of September 15, 1942, and the date of filing his petition, assigning as reason for such refusal that such expressions were of necessity actuated by appellant's desire to secure a divorce in order to marry Mrs. Ann Reiger. He was not under such engagement of marriage before December 1, 1942, at the earliest and the record clearly shows that many of his expressions to the effect that appellant had adopted Texas as his home state, coupled with his actual negotiations for business association and investment, occurred before, at the time, or shortly after he made the acquaintance of Mrs. Reiger, and long before their agreement concerning a prospective marriage. We therefore feel that such testimony is entitled to legal weight and has probative force. The test is the good faith of the intending party. Motive is immaterial unless it be for the sole purpose of securing a divorce with no intention of making the new state of residence a permanent home. The intention to remain must exist and is to be determined from all facts, circumstances, acts and declarations. See, also, Curry v. Curry, Tex.Civ.App., 122 S.W.2d 677; Percy v. Percy, 188 Cal. 765, 207 P. 369; St. John v. St. John, 291 Ky. 363, 163 S.W.2d 820; McClintock v. McClintock, 147 Ky. 409, 144 S.W. 68, 39 L.R.A.,N.S., 1127.

We have undoubtedly made this opinion too extended, but have attempted to detail sufficient facts and circumstances that appear in the record, as well as sufficient citation of authorities, forming the basis for our conclusions, and yet at the same time to sound a warning to newcomers within our gates that divorce applications should and will be carefully scrutinized to determine whether or not the applicant possesses those qualifications of residence required by our divorce statutes. So far as residence is concerned, there must be more than intent; there must be more than physical presence; there must be a concurrence of overt act and bona fide intention to make and maintain a home in this state. Texas does not covet or solicit the reputation of furnishing a forum attractive to divorce seekers.

We do feel, however, the record in this case shows appellant qualified under the law to maintain his suit for divorce and that the learned trial judge erred in dismissing the cause and refusing to enter a judgment of divorce in favor of appellant. Ogden v. Ogden, Tex.Civ.App., 144 S.W. 355. The trial court having passed on the issue of abandonment favorably to appellant, and we being in agreement with the trial court's findings on such issue, there is no occasion or necessity for remanding the case. The judgment of the trial court dismissing the cause will therefore be reversed and judgment will be here rendered in favor of appellant granting him a divorce from appellee and dissolving their marital ties. A fee of $50 will be allowed the attorney ad litem to be taxed as part of the costs in the case. Appellant in his pleadings states he does not ask that any costs be taxed against appellee, but proffers and offers to pay all costs. It will therefore be ordered that appellant be taxed with all costs.

Reversed and rendered.