**WILSON v. WILSON.**

No. 14699.

Court of Civil Appeals of Texas.
Fort Worth.

June 22, 1945.

Rehearing Denied Sept. 7, 1945.

Nelson, Montgomery & Robertson, of Wichita Falls, for appellant.

W. E. Fitzgerald, of Wichita Falls, for appellee.

McDONALD, Chief Justice.

This is a divorce suit, brought by the husband. The trial court, without a jury, granted the divorce. The wife has appealed, urging, under her single point of error, that there is no evidence of probative force to establish the fact that the husband had been a bona fide inhabitant of the State of Texas for twelve months and a resident of Wichita County for six months next before the suit was filed.

The trial court having found in favor of the husband, we shall treat as true the testimony of the husband and the witnesses testifying in his favor. But we are not bound by the conclusion of the trial court that the facts shown were sufficient to meet the requirements of the statute. Art. 4631, Revised Statutes, as amended, Art. 4631, Vernon's Tex.Ann.Civ.St.

The husband is a soldier. At the time of trial, and for more than three years prior thereto, he had been stationed at Sheppard Field, in Wichita County, the county in which the suit was filed. Prior to his enlistment in the Army, in 1941, the husband was a resident of the State of Illinois. A few days before his transfer to Sheppard Field, in 1941, he married appellant, a resident of Missouri. Shortly after their marriage, she came to Wichita Falls, in said county, and it is the husband's contention that they established a residence in Wichita Falls at that time, and that he continued to maintain his residence in Wichita Falls up to the time of trial, and intended to make his home in Wichita Falls after finishing his army service.

A review of the law pertaining to the residence of a soldier who is sent to Texas from another state under military orders properly begins with the case of Gallagher v. Gallagher, Tex.Civ.App., 214 S.W. 516, 518. It is there held that the words "inhabitant," "citizen" and "resident" mean substantially the same thing. In order to be an inhabitant one must acquire a domicile or home, and it must have the stamp of permanency on it. There must not only be an intention to establish a permanent domicile or home, but the intention must be accompanied by some act done in the execution of the intent. A soldier can abandon his domicile of origin and select another, yet, in order to show a new domicile during the term of enlistment, there must be the clearest and most unequivocal proof. The testimony of the party as to an intention to establish the new domicile is not enough, when not accompanied by any act or declaration showing such intent. Applicable to the case before us is the following statement from the Gallagher opinion:

"In this case it must be kept in view that appellee had a domicile of origin, and, in order to change, clear and unequivocal proof must be submitted of the choice of another domicile."

Applicable also is the following, taken from the same opinion:

"Ordinarily, it is a presumption of law that where a person actually lives is his domicile, such presumption of course being rebuttable; but no such presumption could arise in the case of a soldier in active service, who has no choice of domicile, but must ordinarily cling to his domicile of origin. Ordinarily, an act of removal to a certain location, coupled with the intent to make a permanent residence there, might be sufficient to fix a domicile, but that is because the removal is voluntarily made, which could not occur in the case of a soldier in active service."

The rules stated are recognized in Dodd v. Dodd, 15 S.W.2d 686; Morehouse v. Morehouse, 111 S.W.2d 831; Warfield v. Warfield, 161 S.W.2d 533; Therwanger v. Therwanger, 175 S.W.2d 704; Pettaway v. Pettaway, 177 S.W.2d 285; Struble v. Struble, 177 S.W.2d 279; Wells v. Wells, 177 S.W.2d 348; Randle v. Randle, 178 S.W.2d 570; Perry v. Perry, 181 S.W.2d 133; and Kilian v. Kilian, 185 S.W.2d 611, all being decisions of Courts of Civil Appeals. In a recent case our Supreme Court made the following pronouncement, quoting from 15 Tex.Jur. 716:

"A soldier or sailor does not acquire a new domicile merely from being stationed at a particular place in line of duty. His domicile remains the same as that which he had when he entered the service, unless he shows a change by proof of clear and unequivocal intention." Commercial Credit Corporation v. Smith, Tex.Sup., 187 S.W.2d 363, 366.

The following is a summary of the testimony of the husband, insofar as it bears upon the question of residence:

He has been at Sheppard Field since September 3, 1941. He had a choice of going to Biloxi, Mississippi, or to Sheppard Field, and chose the latter, but at the time of making such choice he had not decided to make Wichita Falls his home. He married appellant in St. Louis, Missouri, on August 26, 1941. He spent fifteen days at the camp before his wife came down, and then they established a residence in Wichita Falls. They bought some furniture, after first living in furnished apartments. When he and his wife first came to Wichita Falls, he looked the situation over and saw the possibilities of making money, and at that time discussed it with Ted Norwood, a prominent man in Wichita Falls who was engaged in the oil business, and they became very good friends, and they decided that the "first chance we got we would go in business together and if that was after the war, then that would be the case," but that, in the meantime the man in question, who was also in the army, was "shipped out." It was appellee's intention at that time, and has been since, to make Texas his home. When the war is over, if he is spared, appellee intends to make Wichita Falls his home. Until after he and his wife separated, appellee had his residence in Wichita Falls, and not at Sheppard Field. He talked to two of his close friends and explained to them his intentions. Appellee was a music teacher before he enlisted, living and teaching in the State of Illinois. He knows nothing about the oil business. Appellee tried to vote in the November, 1944, election, by obtaining a ballot from Illinois, but "it didn't get here in time." He does not own an automobile. He does not belong to any fraternal orders. His church membership is in Illinois. We quote the following testimony as it appears in the the statement of facts:

"Q. Where did you tell the army you lived when you enlisted? A. Bloomington, Illinois.

"Q. And you changed it? A. Yes, sir.

"Q. On your army record? A. Yes, sir.

"Q. Where did you change it? A. Wichita Falls.

"Q. When? A. When I moved here with my wife, I changed it to Wichita Falls."

There is no amplification of this portion of the testimony to show what army record was being referred to, nor does the testimony show whether the information so given to the army purported to relate to appellee's permanent residence, or to his temporary residence while away from the army camp.

Sergeant Robert Hall testified that he was stationed at Sheppard Field, and had known appellee about thirteen months. He met appellee's wife one time, at a funeral. He heard appellee several times express his intention of making Texas his home. He overheard a conversation between appellee and Corporal Ted Norwood, and "they were figuring on going into business here after the war." The witness was asked, "Did he ever tell you he had selected Wichita Falls or Texas as his home?" and answered, "He never did state any certain part of Texas, but I know not long ago we were trying to figure out something to go into after the war." Appellee seemed to like Texas. He talked about going into business with the witness, not in Wichita Falls, but "just in Texas." Witness preferred this part of the state, the town of Port Arthur. Asked if they wanted to go into business in Port Arthur, witness answered: "Not necessarily, just somewhere in the State. I preferred Port Arthur." Witness does not have anything definite in mind, he is "still on the loose."

Corporal George H. Simpson testified that he was stationed at Sheppard Field. He had known appellee thirteen months. He roomed with him five months. He heard appellee say that he intended to stay in Texas and live in Texas when the war was over, and that he was going into business. He did not know what business it was, but heard appellee talk about it several times. He liked the State very much. Witness did not remember that appellee specified any particular place in Texas where he would live. He just liked the general country.

Mrs. L. C. Duncan testified that she knew appellee and his wife, and that the latter stayed with the witness two months after appellant and appellee were separated. She overheard appellee and witness' husband talking about what kind of business they would like to have in Wichita Falls, but never paid much attention to it. She just heard them talk about going into business, but did not know what kind it was. She did not know that appellee was a music teacher. She has heard appellee say that he intends to marry a girl who lives in Wichita Falls and that they will live in

Wichita Falls. She has heard appellee and the girl he intends to marry talk about marrying and living in Wichita Falls.

After the above witnesses testified, appellee was recalled to the witness stand. He said that he had talked to Sergeant Duncan, husband of the witness last mentioned, about going into business. "We talked about what kind of business we would like to get in." If he cannot find something which will provide him a livelihood, appellee intends to go back to school. He would not necessarily go back to school in Illinois, he "had just as soon go to school in Texas." He has not thought about any particular school because "the army furnishes so much of the money, and they can send you back to school." He intends to go back to school if he cannot find something to do. He intends to go to school in Texas. He likes Fort Worth and likes Dallas "fairly well."

It appears from the record that appellant, prior to the filing of the present suit, sued for divorce in Wichita County, alleging that she had been an actual bona fide inhabitant of Texas for more than twelve months and that she had resided in Wichita County for more than six months next preceding the filing of her suit, but that she had caused her suit to be dismissed when she learned that she could not recover a judgment awarding her permanent alimony in this state.

Appellee argues that the decision in the Struble case, 177 S.W.2d 279, supports the judgment of the trial court in the present case. While the facts of the present case are similar in some respects to those of the Struble case, we do not believe that they show in clear and unequivocal manner that appellee changed his domicile to Wichita County. The question is not whether he intends to live in Wichita Falls after his release from the army, but whether he became a resident of that county the required length of time before the filing of this suit. We do not find proof in this record of a clear and unequivocal intention on the part of appellee to make Wichita Falls his permanent home. At best it may be said that he would like to go in business in Wichita Falls. If he fails to find the desired opportunity there, he would like to live somewhere in Texas. He and Ted Norwood have talked about going into business in Wichita Falls, but there is no evidence of plans of a concrete nature. He and Sergeant Hall have talked about going into business somewhere in Texas. If he cannot find something which will make him a living, he will go back to school, not necessarily in Illinois, but in Texas. He specifically mentioned schools in Dallas and Austin. Neither is the proof of intention to change his domicile to Wichita County clear and convincing, nor is there proof of a clear and unequivocal intention on his part to make Wichita Falls his home. Appellee, from the evidence contained in the record, occupies the position of perhaps many other men now in the armed services. He has no clear and unequivocal intention to change his domicile to a particular place, but will determine that question later in the light of such opportunities as may be presented to him after his release from the army.

There is not, and most certainly should not be, any purpose on our part to disclaim as residents of our State any members of our armed forces who might desire to reside here after the conclusion of their period of enlistment, but for the purposes of this case we must decide whether there is sufficient proof of actual inhabitancy and residence in Wichita County during the required time before and up to the time of the filing of this suit. The proof offered does not, in our opinion, meet the tests which have been laid down by our courts.

We do not attach any importance to the fact that appellant declared in the petition which she filed that she was a resident of the county and an inhabitant of the state. Her mere declaration to that effect did not make it so, the parties could not confer jurisdiction upon the court simply by declaring that they possessed the necessary residence qualifications.

The judgment of the trial court is reversed, and the suit is dismissed without prejudice to the right of appellee to sue for divorce in a court having jurisdiction.