

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00674-CV

Christopher Todd **RUST**,
Appellant

v.

Aslynn Tanis **RUST**,
Appellee

From the 451st Judicial District Court, Kendall County, Texas
Trial Court No. 17-470
Honorable Bill R. Palmer, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Karen Angelini, Justice
                Irene Rios, Justice

Delivered and Filed:  October 3, 2018

REVERSE IN PART AND AFFIRM IN PART

This appeal arises out of a divorce proceeding filed by Christopher Todd Rust. Christopher appeals the trial court's order that granted Aslynn Tanis Rust's special appearance, plea to the jurisdiction, and request for the trial court to decline jurisdiction and awarded Aslynn attorney's fees. We reverse that portion of the trial court's order granting Aslynn's special appearance and affirm the remainder of the trial court's order, which grants Aslynn's plea to the jurisdiction and request for the trial court to decline jurisdiction and awards Aslynn attorney's fees.

## BACKGROUND

Christopher and Aslynn were married on October 25, 2003, in Bexar County, Texas, but filed their marriage license in Kendall County, Texas. Christopher is an active duty servicemember with the United States Air Force and claims Kendall County, Texas as his home of record and Texas as his state of residence. The parties are the parents of two children, six-year-old C.R. and three-year-old A.R. Both Christopher and Aslynn testified that, at the time of the underlying hearing, the parties and their children had continuously lived in North Carolina for six years. In August 2017, Aslynn filed for legal separation in North Carolina. Subsequently, on September 11, 2017, Christopher filed an original petition for divorce in Kendall County, Texas.

A hearing was set for September 20, 2017, and Aslynn was served with notice of the pending proceedings on September 15, 2017. On September 19, 2017, Aslynn filed a Motion for Continuance, which the trial court granted. On October 6, 2017, Aslynn filed a "Special Appearance, Plea to the Jurisdiction, Request for Court to Decline Jurisdiction, Objection to Venue and Original Answer." Aslynn argued Texas lacks subject-matter jurisdiction over the suit because Texas is not the home state of the children under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). Following a hearing held on October 10, 2017, the trial court entered an order granting Aslynn's special appearance and plea to the jurisdiction and dismissed the petition for divorce. The trial court also awarded Aslynn $7,000 in attorney's fees.

In its Findings of Facts and Conclusions of Law, the trial court found that the children do not have significant contacts with Texas and that Texas is not the children's home state as defined by section 152.201 of the Texas Family Code. Therefore, the trial court concluded Texas does not have jurisdiction over the children, the subject of the proceeding. Rather, the trial court determined that the children were born in North Carolina, have exclusively resided in North Carolina since birth and for the past six years, have continuously attended school in North Carolina, and have

exclusively lived with their parents in North Carolina. Therefore, the trial court concluded North Carolina is the children's home state.

The trial court additionally determined Christopher did not meet the requirements for being a resident of Kendall County, Texas. Further, the trial court found Aslynn "initiated the initial steps for a divorce proceeding by filing a legal separation action in North Carolina to address the use, possession and access to the marital property and to address the conservatorship issues for the minor children." The trial court concluded that "in the interest of justice, North Carolina is the more convenient forum and most suitable state to preside over both the conservatorship and the divorce action of the parties." The trial court further explained, "when conservatorship and divorce are in issue … dismissal is more advisable" over abatement.

Christopher appeals the trial court's order.[1]

## DISCUSSION

### UNTIMELY FILED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Before we address the remainder of Christopher's issues, we address issue five, wherein Christopher contends the trial court erred by not timely filing findings of fact and conclusions of law and requests that we strike the trial court's findings of fact and conclusions of law. Specifically, Christopher argues the trial court's failure to timely file the findings of fact and conclusions of law, combined with erroneous findings, deprived him of his opportunity to appeal.

After the trial court's order was signed, Christopher timely requested findings of fact and conclusions of law. *See* TEX. R. CIV. P. 296 (within twenty days after a judgment is signed, any party may request that the trial court state its findings of fact and conclusions of law in writing).

---

[1] Christopher filed a document he identified as a Petition for Writ of Mandamus and Emergency Application for Writ of Injunction. In an order dated March 2, 2018, we pointed out that Christopher appeals from a final order and indicated that his petition would be treated as a brief in a regular appeal.

When the trial court did not file findings of fact and conclusions of law, Christopher timely filed a notice of past due findings. *See* TEX. R. CIV. P. 297. As a result, the trial court's findings of fact and conclusions of law were due to be filed on December 11, 2017.[2] The trial court signed the findings of fact and conclusions of law on December 12, 2017, and they were filed on December 13, 2017.

The clerk's record and the reporter's record for this appeal were filed with this court on December 11, 2017. The appellant's opening brief was originally due with this court on January 10, 2018. A supplemental clerk's record containing the findings of fact and conclusions of law was filed with this court on January 3, 2018. This court granted Christopher an extension of time until March 1, 2018 to file his brief. Christopher filed his brief with this court on March 1, 2018.

The procedural rules establishing the time limits for the requesting and filing of findings of fact and conclusions of law do not preclude the trial court from issuing belated findings. *Ex parte Barham*, 534 S.W.3d 547, 556 n.16 (Tex. App.—Texarkana 2017, no pet.); *Jefferson County Drainage Dist. v. Lower Neches Valley Auth.*, 876 S.W.2d 940, 959–60 (Tex. App.—Beaumont 1994, writ denied); *Morrison v. Morrison*, 713 S.W.2d 377, 380 (Tex. App.—Dallas 1986, writ dism'd). Unless litigants can show they were harmed, they have no remedy if a trial court untimely files findings and conclusions. *Jefferson County*, 876 S.W.2d at 960; *Morrison*, 713 S.W.2d at 381.

To show harm, Christopher must demonstrate that he either (1) "was unable to request additional findings" or that he (2) "was prevented from properly presenting his appeal." *Robles v. Robles*, 965 S.W.2d 605, 610 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (citing *Jefferson County*, 876 S.W.2d at 960; *Morrison*, 713 S.W.2d at 381). Because "a trial court may file

---

[2] December 10, 2017, the fortieth day from the original request for findings of fact was filed, fell on a Sunday; therefore, the findings of fact and conclusions of law were due to be filed on December 11, 2017.

additional findings even after it loses plenary power to affect the judgment," "[t]he failure to request additional findings of fact and conclusions of law constitutes a waiver on appeal of the trial court's lack of such findings and conclusions." *Robles*, 965 S.W.2d at 611. However, even if reversible error is shown, the usual remedy is to abate the appeal to afford the appellant an opportunity to request additional or amended findings and conclusions. *Id.* at 610.

Although the trial court prepared and filed findings of fact and conclusions of law in an untimely manner, Christopher has not shown harm. Rather, the record affirmatively shows Christopher was not harmed by the absence of timely findings and conclusions. *See Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996). Christopher was not denied the opportunity to properly present his appeal; after the appellate record was supplemented, this court granted Christopher an extension to file his brief which allowed him the opportunity to address the untimely filed findings and conclusions.

Additionally, Christopher was not prevented from objecting and requesting additional findings of fact and conclusions of law. Within 10 days after the trial court files its original findings and conclusions, any party may file a request for specified additional or amended findings or conclusions. TEX. R. CIV. P. 298. A trial court may file additional findings even after it loses plenary power to affect the judgment. *Morrison*, 713 S.W.2d at 380–81; *see also Tesoro Marine Services, Inc. v. Bagby*, No. 04-03-00272-CV, 2004 WL 2450872, at *7 (Tex. App.—San Antonio Nov. 3, 2004, pet. denied) (mem. op). "The failure to request additional findings of fact and conclusions of law constitutes a waiver on appeal of the trial court's lack of such findings and conclusions." *Robles*, 965 S.W.2d at 611. The record indicates that although Christopher did object to the findings of fact and conclusions of law, he did not file a request for additional findings of fact or conclusions of law with the trial court. Additionally, neither party asked this Court to abate the appeal for the trial court to make additional findings of fact or conclusions of law.

We decline Christopher's request to strike the trial court's findings of fact and conclusions of law. Based on this record, we conclude Christopher has not been deprived of his ability to properly present his case on appeal as a result of the trial court's late filing of its findings of fact and conclusions of law. *See* TEX. R. APP. P. 44.1.

Issue five is overruled.

## JURISDICTION

Christopher raises two issues regarding the trial court's jurisdiction. In issue one, Christopher contends Texas has "jurisdiction [over] all issues and parties due to the provisions of the Texas Family Code regarding the domicile, that is, (permanent residence) of active duty servicemen and their spouses." In issue three, Christopher contends the trial court's order erroneously determines the issue of jurisdiction.

The underlying litigation is comprised of two actions, divorce and custody. To address Christopher's issues, we first examine jurisdiction with regard to each action separately and then discuss Christopher's assertion that the trial court's decision to decline jurisdiction was erroneous because the Kendall County court is the proper court for both the divorce and custody actions.

### *May Christopher maintain a suit for divorce in Kendall County?*

Family Code section 6.301 provides that a suit for divorce may not be maintained in this state unless, at the time the suit is filed, either the petitioner or the respondent has been:

(1) a domiciliary of this state for the preceding six-month period; and

(2) a resident of the county in which the suit is filed for the preceding 90–day period.

TEX. FAM. CODE ANN. § 6.301.

Section 6.301 is not jurisdictional, but it controls a petitioner's right to sue for divorce; it is a mandatory requirement that cannot be waived. *See In re Green*, 385 S.W.3d 665, 669 (Tex.

App.—San Antonio 2012, orig. proceeding); *Reynolds v. Reynolds*, 86 S.W.3d 272, 276 (Tex. App.—Austin 2002, no pet.); *McCaskill v. McCaskill*, 761 S.W.2d 470, 473 (Tex. App.—Corpus Christi 1988, writ denied) ("Though not jurisdictional, the residency requirement protects the interests of the [s]tate as well as the parties, and cannot be waived by the parties."). The issue of residency is a question of fact for the trial court, and its finding will not be disturbed absent an abuse of discretion. *See Griffith v. Griffith*, 341 S.W.3d 43, 53 (Tex. App.—San Antonio 2011, no pet.).

"The test for 'residence' or 'domicile' typically involves an inquiry into a person's intent." *Powell v. Stover*, 165 S.W.3d 322, 326 (Tex. 2005). When determining where a person resides, volition, intention and action are all elements to be equally considered. *See Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex. 1964). In order to be a resident, there must be an intention to establish a permanent domicile or home, and the intention must be accompanied by some act done in the execution of the intent. *Wilson v. Wilson*, 189 S.W.2d 212, 213 (Tex. Civ. App.—Fort Worth 1945, no writ). With regards to a soldier in the military, the "soldier does not acquire a new domicile merely by being stationed at a particular place in the line of duty. Rather, a soldier's domicile remains the same as when he or she entered the service, unless proof of clear and unequivocal intention to change domicile is shown." *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 849 n. 17 (Tex. 2000) (internal citations omitted); *see also Miller v. Miller*, 306 S.W.2d 175, 176 (Tex. App.—San Antonio 1957, no writ) (holding a military service member who at the time he entered the armed forces lived in Victoria County, Texas and did not acquire another permanent residence retained his residence and domicile as it existed at the time he entered the service).

The record before us does not show an "unequivocal intention to change domicile." *Torrington*, 46 S.W.3d at 849 n.17. Christopher testified he was a resident of Kendall County, Texas when he entered the Air Force Academy. According to Christopher, when he entered the

Air Force in 1995, he designated an address in Kendall County, Texas as his home of record. Christopher further testified he has not established a fixed and permanent home anywhere other than Texas and that he intends to return to Kendall County, Texas upon his retirement from the Air Force. In support of this assertion, Christopher presented a copy of his federal tax returns, which identify Texas as his residence. Further, Christopher testified because Texas is identified as his home state of residence, he does not pay income taxes in any state. Christopher additionally testified that he has maintained his voter registration in Texas and has not voted in any other state. Christopher has also maintained his Texas drivers license. Although Christopher and Aslynn owned a home in North Carolina, they also owned a home in the state of Christopher's previous duty station, Arizona. Accordingly, the record supports Christopher's assertion that he is a domiciliary of Texas and a resident of Kendall County. *See* TEX. FAM. CODE ANN. § 6.303 (providing that "[t]ime spent by a Texas domiciliary outside this state or outside the county of residence of the domiciliary while in the service of the armed forces or other service of the United States or of this state ... is considered residence in this state and in that county."); *see also Torrington*, 46 S.W.3d at 849 n.17.

Therefore, we conclude Christopher may maintain a divorce proceeding in Kendall County, Texas.

Issue one is sustained.

### Does the Kendall County court have jurisdiction over the custody action?

We now turn to whether the trial court has subject matter jurisdiction over the child custody determination. Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *In re B.A.B.*, 124 S.W.3d 417, 419 (Tex. App.—Dallas 2004, no pet.). The party seeking to invoke the trial court's jurisdiction bears the burden of alleging facts that affirmatively demonstrate a court's authority to hear a case. *Dillard Tex. Operating Ltd. P'ship v. City of*

*Mesquite*, 168 S.W.3d 211, 214 (Tex. App.—Dallas 2005, pet. denied).  We construe the pleadings in favor of the party invoking jurisdiction.  *Id.*  We must also consider relevant evidence when necessary to resolve the jurisdictional issue.  *Id.*

Section 152.201(a) of the UCCJEA is the exclusive jurisdictional basis for making a child custody determination by a court of this state.  *See* TEX. FAM. CODE ANN. § 152.201(b).  Under section 152.201(a), a Texas court "has jurisdiction to make an initial custody determination only if: (1) this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;" (2) a court of another state does not have "home state" jurisdiction or the court having "home state" jurisdiction has declined to exercise jurisdiction on the ground that Texas is the more appropriate forum and the child or his parents have a significant connection with the state; or (3) all courts otherwise having jurisdiction have declined jurisdiction on the ground that Texas is the more appropriate forum.  *See id.* § 152.201(a).  "Home state" means the state in which a child lived with a parent or person acting as a parent for at least six consecutive months immediately before commencement of a child custody proceeding.  *See id.* § 152.102(7).  In determining the child's "home state," we focus on the child's "physical presence" in a state, not the legal residency of his parents.  *See generally Powell v. Stover*, 165 S.W.3d 322, 325–28 (Tex. 2005).

Here, the only facts pleaded in support of jurisdiction in Christopher's divorce petition were that Christopher was a legal domiciliary of Texas and resident of Kendall County.  On their face, Christopher's pleadings would not establish jurisdiction under the UCCJEA.  Moreover, Christopher did not submit an affidavit in compliance with section 152.209 of the Family Code, which required him to file an affidavit in the trial court informing the trial court of the children's address, where they lived for the five years preceding the suit, and any court proceedings involving

the children.[3]  *See* TEX. FAM. CODE ANN. § 152.209.  Aslynn, however, did file a UCCJEA-compliant affidavit establishing the children have never lived in Texas and have lived in North Carolina since their births.  Thus, the only evidence before the trial court establishes North Carolina, not Texas, was the children's "home state."

The only other basis upon which the trial court could acquire jurisdiction over the custody suit is if the North Carolina court declined jurisdiction on the ground that Texas is a more appropriate forum.  *See id*. § 152.201(a).  However, the record contains no pleadings or proof to support such a conclusion.  We therefore conclude that under the plain terms of the UCCJEA, the Kendall County court lacked subject matter jurisdiction over the child custody action.

In reaching this conclusion, we reject Christopher's assertion that Family Code section 6.303 conferred jurisdiction upon the Kendall County court over the child custody action.  Section 6.303 provides that

> Time spent by a Texas domiciliary outside this state or outside the county of residence of the domiciliary while in the service of the armed forces or other service of the United States or of this state, or while accompanying the domiciliary's spouse in the spouse's service of the armed forces or other service of the United States or of this state, is considered residence in this state and in that county.

*Id*. § 6.303.  According to Christopher, this section vested the trial court with subject matter jurisdiction irrespective of whether jurisdiction existed under the UCCJEA.  However, the UCCJEA specifically provides that it is the "exclusive jurisdictional basis" for making a child custody determination.  *Id*. § 152.201(b).  We cannot ignore this express statutory language.  Moreover, the UCCJEA states that if its provisions conflict with another statute, the UCCJEA controls.  *Id*. § 152.002.

---

[3] The record indicates Christopher submitted what purported to be an affidavit pursuant to the UCCJEA, but the trial court did not admit the document into evidence, stating the entire document was stricken "[t]he way it's offered … it's a pleading."

Accordingly, we conclude the trial court properly determined it did not have jurisdiction to make an initial child custody determination in relation to C.R. and A.R.

***Did the trial court err by declining to exercise jurisdiction over the divorce proceeding?***

Finally, we examine whether the trial court erred by declining to exercise jurisdiction over the divorce action. The question before us is whether, given our determination that Christopher may maintain a divorce action in Kendall County, Texas, the trial court erred by declining to exercise jurisdiction over the divorce proceeding. Family Code section 152.207(d) provides:

> A court of this state may decline to exercise its jurisdiction under this chapter if a child custody determination is incidental to an action for divorce ... while still retaining jurisdiction over the divorce....

*Id.* § 152.207(d). The language of section 152.207(d) as quoted above is discretionary, not mandatory. *See* TEX. GOV'T CODE ANN. § 311.016(1) (the word "may" creates discretionary authority). The trial court *may* retain jurisdiction over the divorce, but is not required to do so. TEX. FAM. CODE ANN. § 152.207(d); *see also* TEX. FAM. CODE ANN. § 6.308(a) (noting that a court in which a suit for dissolution of a marriage is filed "may" exercise its jurisdiction over those portions of the suit for which it has authority). Accordingly, we conclude the trial court was not required to retain jurisdiction over the divorce action.

Christopher and Aslynn have not lived in Texas as a married couple since shortly after their wedding in 2003. Their most recent marital home is located in North Carolina where Christopher and Aslynn live with their children. According to the record, Christopher intends to remain in North Carolina, barring deployment or reassignment, at least until his retirement from the Air Force, which is scheduled for 2019. The record also indicates the bulk of the property in dispute is located in North Carolina. According to the record, the marital property in which Texas has a valid state interest consists of motor vehicles that are registered, titled, and insured in Texas, but located in North Carolina and a "lot in Comal County and an airplane hangar there." Additionally,

Aslynn had already initiated legal separation proceedings in North Carolina before Christopher filed his petition in Kendall County. *See Cooper v. Shealy*, 140 N.C. App. 729, 537 S.E.2d 854, 858 (2000) (noting that North Carolina mandates a one-year separation in order to file for divorce). Given this record, we find no abuse of discretion by the trial court.

Issue three is overruled.

### SPECIAL APPEARANCE

In issue two, Christopher argues the trial court erred by granting Aslynn's special appearance because Aslynn submitted to the trial court's exercise of personal jurisdiction and waived special appearance when she filed a motion for continuance before she filed her special appearance.

Under Rule 120a, a special appearance, properly entered, enables a non-resident defendant to challenge personal jurisdiction in a Texas court. TEX. R. CIV. P. 120a. Rule 120a requires strict compliance, and a non-resident defendant will be subject to personal jurisdiction in Texas courts if the defendant enters a general appearance. *Morris v. Morris*, 894 S.W.2d 859, 862 (Tex. App.—Fort Worth 1995, no writ); *see Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 201 (Tex. 1985); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("[T]he personal jurisdiction requirement is a waivable right."). Rule 120a states that "[e]very appearance, prior to judgment, not in compliance with this rule is a general appearance." TEX. R. CIV. P. 120a(l).

"A party enters a general appearance whenever [she] invokes the judgment of the trial court on any question other than the court's jurisdiction; if a [respondent's] act recognizes that an action is properly pending or seeks affirmative action from the court, that is a general appearance." *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998). A party enters a general appearance when she files a motion for continuance. *Leaverton v. Leaverton*, 417 S.W.2d 82, 84 (Tex. App.—Dallas 1967, writ ref'd n.r.e.).

Here, Aslynn filed her motion for continuance before filing her special appearance. Further, her motion for continuance was not filed subject to a special appearance and it sought affirmative relief. By not strictly following rule 120a, Aslynn waived her special appearance and made a general appearance. Accordingly, we conclude the trial court erred by granting Aslynn's special appearance.

Issue two is sustained.

### TEMPORARY INJUNCTION

In his fourth issue, Christopher requests Aslynn be enjoined from prosecuting a divorce suit in North Carolina after entering a general appearance in the underlying case. Christopher contends elsewhere in his brief that Aslynn should be "temporarily enjoined from prosecuting her divorce case in North Carolina until this Court renders its ruling." In our order dated March 2, 2018, we denied Christopher's request for an injunction. On March 6, 2018, Christopher filed a Motion to Withdraw Request for Temporary Injunction and Continue Consideration for Writ of Mandamus." In an order dated March 9, 2018, we acknowledged Christopher no longer sought injunctive relief. Therefore, we need not consider the issue as it is moot.

Issue four is overruled.

### ATTORNEY'S FEES

In his sixth issue, Christopher contends the trial court's award of attorney's fees to Aslynn was an abuse of discretion. In his reply brief, Christopher asserts the award of attorney's fees was "arbitrary, unreasonable, and without regard to guiding legal principles."

#### *Standard of Review and Applicable Law*

Texas Family Code section 106.002 governs attorney's fees in suits affecting the parent-child relationship. *See* TEX. FAM. CODE ANN. § 106.002; *Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002). Section 106.002 provides that in a suit under Title 5 of the Texas Family Code, "the court

may render judgment for reasonable attorney's fees and expenses and order the judgment and post judgment interest to be paid directly to an attorney." TEX. FAM. CODE ANN. § 106.002(a). The trial court has discretion in awarding fees under this statute. *Lenz*, 79 S.W.3d at 21; *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996). Therefore, we review the trial court's award of attorney's fees for abuse of discretion. *See Russell v. Russell*, 478 S.W.3d 36, 47 (Tex. App.—Houston [14th Dist.] 2015, no pet.). We will uphold the trial court's award unless we find that the court acted "without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

Evidence must support any award of attorney's fees. *Diaz v. Diaz*, 350 S.W.3d 251, 257 (Tex. App.—San Antonio 2011, pet. denied); *see also Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991) (noting "the trial court may award those fees that are 'reasonable and necessary' for the prosecution of the suit"). "To support an award of reasonable attorney's fees, there should be evidence of the time spent by the attorney on the case, the nature of the preparation, the complexity of the case, the experience of the attorney, and the prevailing hourly rates." *In re M.A.N.M.*, 231 S.W.3d 562, 567 (Tex. App.—Dallas 2007, no pet.). "However, 'evidence on each of these factors is not necessary to determine the amount of an attorney's fee award.'" *Id.* (quoting *Sandles v. Howerton*, 163 S.W.3d 829, 838 (Tex. App.—Dallas 2005, no pet.). "The court may also consider the entire record and the common knowledge of the lawyers and judges." *Id.*

### *Discussion*

To establish reasonable and necessary attorney's fees, Aslynn's attorney testified about the nature of the work performed, as well as the fee agreement he entered into with Aslynn. Counsel testified that pursuant to the fee agreement, Aslynn paid the attorney's firm a $5,000 retainer. The designated hourly rate for counsel is $350.00 per hour, which counsel testified is reasonable, as well as customary for the type of litigation and in Kendall County. Counsel noted the rate for

associates is $250.00 per hour and $100.00 per hour for paralegals. Counsel further testified he is Board Certified in Family Law, has been in practice since 1990, and is a partner at his firm. According to counsel, prior to the hearing, $4,962.50 of the $5,000.00 retainer had already been used. Therefore, the amount of the retainer would not cover the entirety of the hearing or the appellate process. Counsel also presented an itemized statement to support his testimony that the attorney's fees were reasonable and necessary.

In light of the evidence presented during the hearing, we conclude the trial court's award of $7,000 in attorney's fees to Aslynn was not arbitrary or unreasonable or without reference to guiding principles.

Issue six is overruled.

## CONCLUSION

For the foregoing reasons, we reverse that portion of the trial court's order granting Aslynn's special appearance and affirm the portion of the trial court's order granting Aslynn's plea to the jurisdiction regarding the child custody determination and Aslynn's request that the trial court decline jurisdiction over the divorce proceeding. We also affirm the portion of the trial court's order awarding Aslynn attorney's fees.

Irene Rios, Justice