Opinion issued December 6, 2018



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00589-CV

———————————

**WINNIE STACEY ALWAZZAN, Appellant**

**V.**

**ISA ALI ALWAZZAN AND INTERNATIONAL AGENCIES CO., LTD,**
**Appellees**

On Appeal from the 306th District Court
Galveston County, Texas
Trial Court Case No. 13-FD-0848

## O P I N I O N

Winnie Stacey Alwazzan ("Winnie") petitioned the Galveston district court for a divorce from her husband, Isa Ali Alwazzan ("Isa"). However, this was not the first divorce suit Winnie had initiated against Isa. She had previously filed divorce actions in Montgomery County and Harris County, which she had

nonsuited at varying stages. The Galveston petition also named International Agencies Co., Ltd ("IACL")—a corporation in which Winnie alleged Isa has an ownership interest—as a party to the suit.[1] Winnie claimed that Isa had fraudulently transferred community funds to IACL.

The trial court granted Winnie's request to serve Isa by publication. Winnie claimed that IACL, a company formed under the laws of the Kingdom of Bahrain, could be served through the Texas Secretary of State. Neither Isa nor IACL responded to the suit. The Galveston trial court rendered a divorce decree, dissolving the marriage between Winnie and Isa. Among its provisions, the decree also awarded Winnie a money judgment against Isa and IACL, jointly and severally, for $416,532,514.56.

After Winnie began the process to execute on the money judgment, Isa filed a motion for new trial and a plea to the jurisdiction, raising issues of subject matter and personal jurisdiction. Isa also asserted that Winnie had never satisfied the 90-day residency requirement of Family Code Section 6.301. *See* TEX. FAM. CODE § 6.301. IACL filed a special appearance and a bill of review, asserting that the trial court lacked personal jurisdiction over it. The trial court signed a judgment, granting Isa's plea to the jurisdiction, resulting in vacatur of the default divorce decree and dismissal of the suit. The judgment also stated that the trial court

---

[1] At times in the record, IACL is referred to as "Intercol."

lacked personal jurisdiction over Isa and IACL. The trial court later granted a motion for sanctions against Winnie, ordering that she pay IACL's and Isa's trial and appellate attorneys' fees as sanctions.

On appeal, Winnie raises three issues. She contends that the record does not support dismissal of the suit based on either lack of subject-matter or personal jurisdiction, and she challenges the sanctions awarded against her.

Because we hold that Winnie did not meet the 90-day residency requirement of Family Code Section 6.301, we affirm the vacatur of the default divorce decree and dismissal of the suit; however, we modify the judgment to conform to our holding regarding the basis for vacatur and dismissal. We affirm the sanctions award but modify it to reflect that the award of appellate attorneys' fees as sanctions is contingent on the outcome of the appeals process. Accordingly, the judgment is affirmed as modified.

## Background

Isa, a citizen of the Kingdom of Bahrain, attended college in Texas. There, he met Winnie, a native Texan. In 1985, Winnie and Isa were married. Isa became an American citizen in 2003 but also maintained his Bahraini citizenship. Isa and Winnie had three children: a daughter born in 1985, a son born in 1995, and another son born in 1997. The family lived in Montgomery County, Texas.

3

Isa and Winnie separated, and Winnie filed for divorce in Montgomery County in July 2011. Four months later, Winnie and Isa signed a mediated settlement agreement ("MSA"). The agreement covered issues relating to conservatorship, child support, and property division. On the signature page, the MSA cautioned that it was "not subject to revocation."

The MSA stated that Winnie's attorney would prepare a "Final Decree" by December 1, 2011. However, a decree was never signed in the Montgomery County action. Winnie retained new counsel, who on February 7, 2012, filed a nonsuit of the Montgomery County action. That same day, Winnie filed a petition for divorce in Harris County district court. The petition did not mention the Montgomery County divorce action.

In April 2012, Isa returned to his native Bahrain; he would later attest that he has never returned to the United States since then. Despite his absence, Isa was represented in the Harris County action by retained counsel. Isa appeared in the action, filing a counter-petition against Winnie. Winnie also added IACL to the divorce suit, claiming there was a community-property interest in the company.

The Harris County court signed temporary orders on March 6, 2012, appointing Isa and Winnie as joint managing conservators of their minor children, K.A. and E.A. The orders provided, "These Temporary Orders shall continue in

4

force until the signing of the Final Decree of Divorce or until further order of this Court."

In December 2012, the Harris County case was tried to the district court's associate judge. IACL had not answered the suit and was not represented by counsel at trial. Winnie averred that IACL had been served through the Texas Secretary of State's Office. Isa did not personally appear, but he was represented, at trial, by his retained counsel.

During trial, counsel for both parties informed the associate judge that they had agreed to waive a de novo hearing to the referring district court judge. Winnie's counsel stated that "everybody is waiving appeal to the referring Court . . . so that we're trying it once."

Following trial, the associate judge issued his written report, addressing, inter alia, the divorce, conservatorship of the children, child support, and division of the community estate. In the report, the associate judge awarded IACL's "assets and liabilities" to Isa. Winnie was awarded $3.5 million against Isa but was awarded no monetary award against IACL.

Winnie filed a motion "for additional findings." She requested that, "in addition to the relief granted in his recommendation to the trial court," the associate judge reconsider his finding of no liability against IACL. She asked that a money judgment be awarded against IACL and Isa, jointly and severally. Winnie

5

asserted that she had shown that Isa "hides his money within [IACL] and withdraws it at his whim." She claimed that IACL "is a sham to protect [Isa] from his creditors."

Addressing the motion, the associate judge issued a hand-written report on February 21, 2013. The report clarified portions of associate judge's earlier report and denied the additional relief requested by Winnie.

On April 10, 2013, Winnie filed a notice of non-suit in the Harris County action. The notice was served on Isa's retained counsel. That same day, Winnie filed an original petition for divorce in Galveston County district court. Winnie named Isa and IACL as respondents. She represented that she was "a resident of [Galveston County] or will have resided in [Galveston County] by final trial for the preceding 90-day period." Winnie stated that she and Isa were the parents of K.A. and E.A., "who are not under the continuing jurisdiction of any other court."

On April 12, 2013, the presiding judge of the Harris County district court signed an "Order on Notice of Non-Suit." The order stated that "the case is dismissed."

On June 3, 2013, Winnie filed an amended petition in the Galveston action. Winnie continued to seek relief from IACL. Among her allegations, Winnie claimed as follows:

*16. Relief from [IACL] for Fraudulent Transfer*

[IACL] is a corporation established under the laws and customs of the Kingdom of Bahrain. It is alleged to be the recipient of community funds, interests, and/or property that was fraudulently transferred by [Isa], without consideration and/or for less than reasonably equivalent value. The purpose of the transfer was to defraud [Winnie's] property rights in that property and/or [Winnie's] separate property rights in that property, and [IACL] had notice of [Isa's] intent to injure [Winnie's] rights. [Isa] has transferred and/or delivered and/or given to [IACL] interests in the community estate.

[IACL] has further subjected itself to the jurisdiction of Texas and furthered the villainous aims of the fraud, waste, and emotional distress of [Winnie] by attempting to form INTERCOL USA, LTD CO, a whol[ly] owned subsidiary of [IACL] formed by [Isa] to further perpetrate scams on [Winnie's] property rights through transfers of property and structuring of the businesses.

*17. Sham corporation*

[Isa] has disregarded the formalities of the corporation and treats the assets and income of [IACL] as his own. By doing so, [Isa] has ignored and disavowed the corporate veil. The assets of [IACL] should be treated as community assests.

*18. Fraud*

[IACL] is alleged to have engaged in a pattern of conduct that demonstrates a conspiracy to defraud [Winnie] of her interest in the community estate. [IACL] has assisted and permitted [Isa] to open businesses such as Innovative Design Concepts, Ltd., a British Corporation . . . under the auspices of [IACL]. EXIT LONE STAR RELITY is a Texas corporation that was created as a subsidiary of [IACL] in Texas to avoid the participation of [Winnie] and the community.

Winnie filed a motion to serve Isa by publication. She supported her motion with her affidavit in which she testified,

7

I have not seen my husband Isa Ali Alwazzan, since April 24, 2012. I have no idea where he is at present. . . . [Isa] is a transient person. I have exercised due diligence to locate the whereabouts of [Isa] and have been unable to do so. I have attempted to contact [Isa] at his old addresses, old phone numbers, old friends, and hangouts. I have been unsuccessful in finding him. [Isa] can be contacted through his company [IACL]. Although they will not tell me where he is, they can always get him a message or money. Serving him through [IACL] would be as likely as any other method of service to provide actual notice of this suit.

The trial court granted Winnie's motion, ordering that service "be effected by publishing notice in the *Galveston County Daily News.*" Winnie later filed a return of service, indicating that notice of the suit was published in the newspaper on July 23, 2013.

Winnie also alleged that service could be made on IACL through the Texas Secretary of State's office. Citation was served on the secretary of state's office along with the amended petition on June 10, 2013. The secretary of state then forwarded the amended divorce petition and citation to an address in Bahrain that Winnie had provided.

On November 7, 2013, the trial court appointed an attorney ad litem to represent Isa. The appointed attorney filed an answer on Isa's behalf, asserting a general denial of Winnie's claims.

The case was tried before a visiting judge on June 13, 2014. Winnie and her counsel attended trial. Neither Isa nor IACL appeared, however, appointed counsel appeared at trial on Isa's behalf.

8

Winnie was the only witness to testify at trial. She answered affirmatively when asked if, prior to filing suit, she had lived in Texas for at least 6 months and in Galveston for at least 90 days.

Winnie testified that Isa had left the country in 2012 with another woman with whom he was having an affair. She stated that, when he left, Isa had cut off all funds to her, leaving her penniless. Winnie testified that Isa had physically abused the children. She indicated that, not long before he left, Isa had given their son a black eye.

Winnie also testified that she served Isa by publication because Isa is transient, traveling around Europe and the Middle East. Winnie stated that she tried to contact Isa through his family and through IACL but was unable to gain his address or his location. She said that she had no way to contact Isa and stated that "me and the kids have been cut off." Winnie indicated that their youngest child, E.A., had spoken to Isa via Skype but was also unaware of his father's location.

Winnie offered evidence indicating that IACL had been served through the Texas Secretary of State's Office. Winnie testified that IACL was founded by Isa's father with ownership being transferred to Isa and his two brothers after she and Isa married. She stated that, during the marriage, IACL's value had increased greatly. Winnie testified that IACL is a large multinational company with 35 divisions, engaged in businesses ranging from freight shipping to international

9

insurance. She stated that IACL has its corporate headquarters in Bahrain. She said that, during their marriage, IACL built a large warehouse in Bahrain, which she valued at $20,000,000. Winnie testified that IACL had built 13 different buildings in Bahrain during their marriage. She stated that "we paid money yearly into those buildings to . . . build them." Winnie testified that Isa often bragged that IACL was worth $5 billion.

Winnie testified that IACL had provided all the funding for a real estate business that Isa had started on IACL's behalf in the United States. She also offered into evidence a "certificate of filing" from the Texas Secretary of State's Office for "INTERCOL USA LTD CO." She testified this was a company IACL used to conduct operations in the Unites States. Winnie also testified that Isa acted as an agent for IACL. She agreed that Isa would "bring [items] into the United States as [IACL's] agent and would sell stuff in the United States and likewise would buy stuff in the United States, ship it at the request of [IACL] to sell at [IACL]."

Winnie described IACL as a corporate sham, explaining that Isa and his brothers routinely disregarded IACL's corporate form. She indicated that Isa intermingled community assets with IACL funds. She said that he transferred IACL's funds to the community estate and transferred the community funds to IACL. She testified that, after they separated, Isa transferred one-half million

10

dollars of community funds to IACL. Winnie averred that Isa had left her with a great amount of unpaid community debt and that their martial residence, worth $800,000, had been foreclosed upon.

Winnie offered into evidence a variety of documentary evidence, including her inventory, listing the couple's assets and liabilities. Under the heading "Husband Managed Community," Winnie's inventory valued a 16.6666% ownership interest in IACL at $6,660,000.00.

On June 19, 2014, the visiting Galveston judge signed a "Reformed Divorce Decree," dissolving the marriage between Winnie and Isa on the grounds of adultery, cruelty, and abandonment. The decree appointed Winnie as E.A.'s sole managing conservator and Isa as his possessory conservator. Isa was ordered to pay child support and spousal maintenance.

Under "Division of the Marital Estate," Winnie was awarded real property in Hockley, Texas and a condo in Galveston. The decree also awarded Winnie a money judgment of $416,532,514.56, jointly and severally, against Isa and IACL.

Isa's appointed attorney sent a letter to Isa informing him of the divorce decree. The letter was addressed and sent to IACL. Isa received the letter in early August 2014. Isa remarried in 2015.

In October 2015, Winnie filed an "Application for Turnover after Judgment and Appointment of Receiver." Winnie asserted that, despite her efforts, she had

been unable to collect the $416,532,514.56 money judgment from Isa and IACL. She requested the trial court to appoint a receiver to assist in the collection of the judgment. The trial court grant granted Winnie's application, appointing a receiver and authorizing the receiver "to take possession of all non-exempt property" in Isa's or IACL's "actual or constructive possession."

In December 2015, the receiver issued a "Revised Court Levy" to HSBC Bank, requesting the bank to intercept any wire transactions to IACL or Isa. The receiver sent further instructions to the bank in March 2016, requesting it to send any intercepted funds to the receiver. In response, HSBC Bank suspended a series of wire transfers that were either originated by IACL or for which IACL was the intended beneficiary. On April 21, 2016, the receiver filed a motion for judgment in rem regarding approximately $1,500,000 being held by HSBC Bank, requesting the court to order the bank to place the funds into the registry of the court for distribution. A hearing was set for May 4, 2016 on the receiver's motion,

On May 2, 2016, IACL filed a special appearance, which it amended on May 4. IACL asserted that the trial court lacked personal jurisdiction over it because IACL did not have sufficient minimum contacts with Texas to be subject to either general or specific jurisdiction in the forum. The trial court signed an order denying IACL's special appearance on May 5.

That same day, the trial court signed an order granting the receiver's motion for in rem judgment. The court ordered HSBC Bank to deposit over $3.6 million, funds originating from IACL, into the court's registry for later distribution to the receiver.

On May 11, 2016, IACL filed a petition for writ of mandamus in this Court, complaining that the trial court had not held a hearing on its special appearance and asserting that the trial court did not have personal jurisdiction over IACL. We granted IACL's emergency motion to stay the trial court's order that required HSBC Bank to tender funds originating with IACL into the registry of the trial court.

On June 13, 2016, Isa filed a plea to the jurisdiction. Isa asserted that the Galveston district court lacked subject-matter jurisdiction over the suit because, when suit was filed, the Harris County district had continuing, exclusive jurisdiction over the matter. Isa also claimed that the Harris County suit had a res judicata effect, barring the Galveston court from considering Winnie's claims. Isa further claimed that the trial court "lack[ed] jurisdiction to issue rulings or orders that contradicted the parties' binding mediated settlement agreement" they had signed in the Montgomery County divorce suit. Finally, Isa asserted that the Galveston court was without authority to render judgment because neither party

13

had been a resident of Galveston County at the time the suit was filed as required by Family Code Section 6.301.  *See* TEX. FAM. CODE § 6.301.

Isa also filed a motion for new trial supported by his declaration.  *See* TEX. R. CIV. P. 329(a) (authorizing trial court to grant motion for new trial filed within two years of judgment, if judgment rendered on service by publication and defendant did not appear in person or by attorney of his own selection).  Isa asserted that a new trial should be granted for the following reasons: (1) service of process on Isa by publication was invalid; (2) the residency requirement of Section 6.301 had not been met; (3) res judicata barred re-litigation of Winnie's claims; (4) the Montgomery Country mediated settlement agreement remains enforceable; and (5) Winnie's filing of the divorce action in Galveston County, after previously filing and nonsuiting the same claims in Montgomery and Harris Counties, "is the embodiment of forum shopping."

On June 30, 2016, IACL filed a separate bill-of-review action in the Galveston court.  In its bill-of-review petition, IACL asserted that the June 2014 divorce decree should be vacated for the following reasons: (1) the trial court had lacked subject-matter jurisdiction to render the decree; (2) IACL was not properly served with process; (3) the trial court lacked personal jurisdiction over IACL; and (4) res judicata barred re-litigation of claims decided by the Harris County court.

14

A hearing on Isa's motion for new trial and plea to the jurisdiction was set for July 19, 2016. Winnie filed written objections to the hearing, asserting that consideration of the motion for new trial was premature because certain procedural requirements had not been satisfied. Specifically, she asserted that she was entitled to service of citation with respect to the motion and was entitled to time for discovery. Winnie also objected to the trial court considering IACL's bill of review at the hearing. At the beginning of the proceeding, the trial court agreed that it would not hear IACL's separately filed and docketed bill-of-review action. However, the trial court overruled Winnie's procedural objection to Isa's motion for new trial. The court stated that it did not want to wait to hear the Isa's motions. The court expressed concern over the pending levy action by the receiver.

At the hearing, the trial court considered evidence regarding the Montgomery County and Harris County divorce actions. The court learned that the parties had signed a mediated settlement agreement in the Montgomery County action that Winnie later nonsuited.

The evidence showed that Winnie had then filed a divorce suit in Harris County. The Galveston court learned that the Harris County court had entered temporary custody orders regarding the couple's then-minor sons. The evidence showed that the associate judge issued his written report in which he determined that Winnie should recover $3.5 million from Isa but should have no recovery

against IACL. After failing to obtain additional findings from the associate judge favorable to her, Winnie had nonsuited the Harris County suit before a final decree was signed by the referring court. That same day, Winnie filed the instant divorce suit in Galveston County. Two days later, the presiding judge in the Harris County suit signed an order dismissing that action. The evidence showed that, in the Galveston suit, service had been purportedly effectuated on Isa by publication and on IACL through the secretary of state's office. Isa offered evidence to show that Winnie had not used due diligence to locate him before she claimed that she service by publication was necessary.

Evidence was also presented regarding whether, as required by Family Code Section 6.301, Winnie had been a resident of Galveston County for 90 days when she filed the Galveston action on April 10, 2013. In her original and amended petitions, Winnie had represented that she was "a resident of [Galveston] [C]ounty or will have resided in this county by final trial for the preceding ninety-day period." At the June 2014 trial, Winnie answered affirmatively when her attorney asked whether she had "lived in Galveston County 90 days prior to filing suit."

At the hearing on Isa's post-judgment motions, Winnie testified that she moved to Galveston in February 2013, less than 90 days before filing suit. However, Winnie's counsel pointed out that she had filed her amended petition in June 2013, more than 90 days after she testified that she had moved to Galveston.

16

Isa presented evidence at the hearing to show that Winnie had never established residency in Galveston County. In his declaration offered to support his motion for new trial, Isa stated that Winnie told him, in an email dated July 24, 2013, that she was only going to Galveston on the weekends, and that she was still living in "our old area."

Isa also called L. McCann, custodian of records for Winnie's employer, Tomball Ford. Through McCann, Isa admitted business records from Tomball Ford, including Winnie's employment application from January 2015. In the application, Winnie listed her address as a Houston address. As part of the application process, Winnie had also filled out an authorization for a background check. The authorization asked Winnie to list her "addresses within the past seven years." She listed a Magnolia, Texas address, indicating that she had lived there from 2001 until 2010. The only other address she listed on the background check was her Houston address.

At the hearing, Winnie was asked why she had not listed Galveston as an address on the background check if, as she claimed, she resided there in 2013. It was pointed out to her that the form instructed her list "addresses within the last seven years." She responded, "I didn't see this within the past seven years [instruction] or I would have put my other addresses." Winnie testified that the condo address was 10811 San Luis Pass Road. However, without detailed

explanation, she stated that she had not provided the Galveston address for the background check because "[t]here is no mailing address for there. I can't get mail there." She agreed that by signing the authorization she was representing to her employer that her answers were true.

At the end of the hearing, the trial court remarked, "[T]his is probably one of the most egregious examples of forum shopping out there. I've never read a case this bad. . . . I am going to grant the plea to the jurisdiction and dismiss the case."

On July 21, 2016, the trial court signed an "Order Granting Isa Ali Alwazzan's Plea to the Jurisdiction," providing in relevant part:

> The Court held a hearing on both motions [Isa's plea to the jurisdiction and motion for new trial] on July 19, 2016. . . .
>
> After considering the motions, the law, the evidence submitted in the Motions, including Declaration of Isa Alwazzan, the evidence submitted at the hearing, and the arguments of counsel, the Court has determined that the Plea to the Jurisdiction should be SUSTAINED because—from the inception of this divorce proceeding to the present—the Court lacked both subject matter jurisdiction over the subject matter of this divorce action and personal jurisdiction of the Respondents Isa Alwazzan and International Agencies Compass. Ltd. Because of the ruling in jurisdiction, the Court did not reach the issues on the Motion for New Trial.
>
> It is therefore, ORDERED, that Isa Alwazzan's Plea to the Jurisdiction is SUSTAINED and that the court has no jurisdiction to hear the divorce filed on April 10, 2013 or any of the motions, orders and ancillary matters filed thereafter (including by [sic] but not limited to the Turnover and Appointment of Receiver Order and any and all actions related to a Receiver and/or levy or other attachment of assets, property and/or funds).

18

It is further ORDERED that the July 19, 2014[2] [sic] Reformed Final Decree of Divorce is void and vacated.

It is further ORDERED that the Receivership that was created by Order dated November 8, 2015, is hereby dissolved.

IT is further ORDERED, that all other judgments, order and matters related to this cause are void, a nullity, of no effect, vacated and not enforceable.

It is further ORDERED, that the Receiver is discharged from his duties and all monies and property collected by him shall be released, or returned to the property party forthwith. . . .

That same day, the trial court also signed its "Order Vacating May 6, 2016 Order for Judgment in Rem." The order stated that, as a result of the July 19, 2016 hearing and the various filings it had considered during the hearing, it had found that "the Petitioner [Winnie] never had jurisdiction to commence this action." The court also stated that it had ruled that "the action be dismissed, the June 2014 judgment be vacated, and that all subsequent supplemental orders be vacated," including the order for turnover and appointment of receiver and "the May 6, 2016 Order which had granted the Receiver Judgment in Rem of the funds that had been levied from HSBC Bank[.]" The trial court found that the May 6, 2016 Order for Judgment in Rem was vacated and ordered the bank to release IACL's funds restrained by the receiver's levy. Based on the trial court's July 21 orders— vacating the 2014 default divorce decree, dismissing the action, and vacating the

---

[2]    The date of the Reformed Final Decree of Divorce was June 19, 2014, not July 19, 2014.

receiver's judgment in rem—this Court dismissed IACL's mandamus petition as moot. *In re Int'l Agencies Co., Ltd.*, No. 01–16–00383–CV, 2016 WL 6462199, *1 (Tex. App.—Houston [1st Dist.] Nov. 1, 2016, orig. proceeding) (mem. op.).

After obtaining dismissal of the suit, Isa and IACL pursued a motion for sanctions against Winnie and her attorneys. They requested the trial court to impose sanctions, in the form of attorney's fees, pursuant to Chapter 10 of the Texas Civil Practice and Remedies Code, Rule 13 of the Texas Rules of Civil Procedure, and the trial court's inherent power.

In their sanctions motion, Isa and IACL alleged that Winnie and her attorneys filed suit in Galveston County "to seek a different result against IACL after they "failed in their earlier attempt [to recover against IACL] in Harris County." They asserted that they sought sanctions because Winnie and her attorneys had made "intentional misrepresentations of fact to this Court [to] falsely create jurisdiction and deny [Isa and IACL] notice of the Galveston County" suit.

Isa and IACL claimed that Winnie and her attorneys violated Rule 13 and Chapter 10 by "fil[ing] groundless pleadings in bad faith seeking to create jurisdiction where none existed, alleging that separate property was community property, and seeking an improper third attempt at a judgment against IACL and Isa[.]" Among the illustrations of this conduct provided by Isa and IACL were the following: (1) falsely alleging and maintaining that Winnie had resided in

Galveston County for the required 90-day period; (2) falsely asserting that Winnie had "no idea where Isa was," thus necessitating service by publication; (3) falsely asserting that there were no prior court-ordered conservatorships affecting the children; (4) asserting that Isa had fraudulently transferred community assets to IACL; and (5) concealing the Montgomery County mediated settlement agreement and the Harris County action.

The trial court conducted an evidentiary hearing on the motion for sanctions in September 2016. Winnie and her attorneys testified at the hearing; each were separately represented by counsel. In October 2016, the trial court signed an order awarding monetary sanctions, in the form of attorney's fees, against only Winnie. No sanctions were awarded against her attorneys. Winnie requested the trial court to issue findings of fact and conclusions of law regarding the sanctions. The trial court filed its findings of fact and conclusions of law in November 2016.

Winnie now appeals, raising three issues. In her first two issues, Winnie contends that the trial court erred in "dismissing the case on a plea to the jurisdiction," asserting that no jurisdictional grounds were presented to trial court to support vacatur of the June 2014 divorce decree and dismissal of the case. In her third issue, Winnie challenges the sanctions award.

## Vacatur of Judgment and Dismissal of Suit

The trial court's judgment[3] reflects that it granted Isa's plea to the jurisdiction—thereby vacating the 2014 divorce decree and dismissing the case—based on a lack of subject-matter jurisdiction and based on a lack of personal jurisdiction over Isa and IACL. We first determine whether the trial court's given reasons, either lack of subject-matter jurisdiction or lack of personal jurisdiction, can support the relief provided by the judgment.

## A.      Subject-Matter Jurisdiction

### 1.      Continuing, Exclusive Jurisdiction

"Subject-matter jurisdiction is essential to a court's power to decide a case." *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). Subject-matter jurisdiction can be raised at any time. *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008). Thus, even though the default divorce decree was rendered in 2014, Isa was entitled to challenge the trial court's subject-matter jurisdiction in his 2016 plea to the jurisdiction. Whether a trial court has subject-matter jurisdiction is a question of law, to which we apply a de novo standard of review. *Minton v. Gunn*, 355 S.W.3d 634, 639 (Tex. 2011).

Isa challenged the Galveston County court's subject-matter jurisdiction by claiming that the Harris County court retained continuing, exclusive jurisdiction

---

[3]      The trial court's two July 21, 2016 orders, along with the October 25, 2016 sanctions order, comprise the trial court's judgment.

over the matter. Under the Family Code, a trial court may acquire continuing, exclusive jurisdiction over the parties and subject matter of a suit affecting the parent-child relationship. *See* TEX. FAM. CODE § 155.001. A trial court acquires continuing, exclusive jurisdiction "on the rendition of a final order," except for three types of final orders that do not give rise to continuing, exclusive jurisdiction. *Id.* at § 155.001(a)–(b). One type of final order that does not give rise to continuing, exclusive jurisdiction is a "voluntary or involuntary dismissal of a suit affecting the parent-child relationship." *Id.* at § 155.001(b)(1).

Once a Texas court has acquired continuing, exclusive jurisdiction under Section 155.001, no other court of this state has jurisdiction of a suit regarding the children except as provided by Chapter 155, Section 103.001(b), or Chapter 262, which governs suits in which the state seeks termination of parental rights. *Id.* § 155.001(c).

Winnie asserts that, because there was no qualifying final order in the Harris County suit, the Harris County court never acquired continuing, exclusive jurisdiction. She points out that she voluntarily nonsuited the case, and, two days later, the Harris County court signed an order dismissing the case. Winnie points out that Section 155.001(b)(1) makes clear that orders of voluntary dismissal are not final orders for purposes of creating continuing, exclusive jurisdiction under the statute. *See id.* § 155.001(b)(1); *see also In re G.A.J.*, No. 01–12–00256–CV,

23

2012 WL 4857925, at *2 (Tex. App.—Houston [1st Dist.] Oct. 11, 2012, no pet.) (mem. op.) (holding that order of nonsuit was not final order creating continuing, exclusive jurisdiction under Section 155.001).

Isa responds by pointing to the Harris County associate judge's post-trial written report in which the associate judge addressed property division, support, and child conservatorship. Isa avers that the associate judge's report became a final order for purposes of Family Code Section 155.001 when Winnie nonsuited the case. Isa cites *Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853, 855 (Tex. 1995) to support his argument.

In *Hyundai*, the Supreme Court of Texas held that a plaintiff's right to nonsuit is subject to the following limitation: "Once a judge announces a decision that adjudicates a claim, that claim is no longer subject to the plaintiff's right to nonsuit." *Id.* at 855. While a nonsuit may have the effect of vitiating a trial court's earlier interlocutory orders, a nonsuit does not vitiate a trial court's previously-made decision on the merits. *Id.* at 854–55. Under the facts in *Hyundai*, the court held that "[a] partial summary judgment is a decision on the merits [,which] becomes final upon the disposition of the other issues of the case." *Id.* at 855. It is on this holding that Isa bases his claim that the associate judge's written report became a final order when Winnie nonsuited her claims for purposes of Family Code Section 155.001(a). We disagree.

24

"[T]he powers vested in an associate judge are prescribed by statute." *In re A.G.D.M.*, 533 S.W.3d 546, 547 (Tex. App.—Amarillo 2017, no pet.). The statute prescribing these powers is Family Code Section 201.007. *See* TEX. FAM. CODE § 201.007.

Section 201.007 permits, in certain instances, an associate judge to render "a final" order, but those instances are limited, and Isa does not assert, and the record does not reflect, that the associate judge signed any type of final order listed in Section 201.007. *See* TEX. FAM. CODE § 201.007(a)(14), (16); *see also Graham v. Graham*, 414 S.W.3d 800, 801 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("Associate judges do not have the power to render final judgment outside the context of certain limited exceptions"). We note that, at the time the associate judge signed his written report, Section 201.007(a)(16) authorized an associate judge to "sign a final order that includes a waiver of the right of appeal [to the referring court] pursuant to Section 201.015." Act of May 25, 2007, 80th Leg., R.S., ch. 839, 2007 Tex. Gen. Laws 1748, 1749 (amended 2017) (current version at TEX. FAM. CODE § 201.007(a)).

Here, the record reflects that no Section 201.007(a)(16) order was signed by the associate judge before the case was nonsuited and before the presiding judge (the referring court) signed an order dismissing the case. The associate judge's report did not include "a waiver of the right of appeal [to the referring court]

25

pursuant to Section 201.015." *See id.* To be clear, the associate judge's report said nothing about a waiver of the parties' rights to seek a de novo hearing before the referring court.

Aside from the fact that the associate judge's report did not include a waiver, the parties also did not agree to waive a de novo hearing in accordance with Section 201.015. That section, referenced in Section 201.007(a)(16), provides, "Before the start of a hearing by an associate judge, the parties may waive the right of a de novo hearing before the referring court in writing or on the record."[4] TEX. FAM. CODE § 201.015(g).

Here, the parties did not "waive the right of a de novo hearing before the referring court in writing" at any point in the proceedings. *See id.* Nor did they, "*[b]efore the start of a hearing by [the] associate judge*, . . . waive the right of a de novo hearing before the referring court . . . on the record." Isa points out that the parties stated on the record, *during* the trial before the associate judge, that they waived the right to "appeal to the referring [c]ourt." *Id.* However, the oral waiver referenced by Isa appears at the very end of trial on page 71 of a 74-page transcript. Thus, the parties did not waive the right to a de novo hearing before the start of the proceeding conducted by the associate judge as required by Section 201.015(g).

---

[4] Section 201.015 was amended in 2015, but the amendment does not affect the resolution of this appeal.

Because the powers vested in an associate judge are prescribed by statute, we must follow the statutory requirements. We are mindful that our primary objective in construing a statute is to give effect to the Legislature's intent. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). We must enforce the statute "as written" and "refrain from rewriting text that lawmakers chose." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009). We strive to construe a statute in a way that gives effect to each provision so that none is rendered meaningless or mere surplusage. *See TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016).

We cannot ignore the Legislature's requirement that waiver of a de novo hearing occur before the start of the hearing conducted by the associate judge. Here, not only did the waiver of a de novo hearing not appear in the associate judge's order itself, as provided in former Section 201.007(a)(16),[5] the parties did not waive the right to a de novo hearing in the manner required by Section 201.015(g). *See* TEX. FAM. CODE § 201.015(g).

---

[5] The Legislature amended Section 201.007(a)(16) in 2017 to provide that an associate judge may "render and sign a final order if the parties waive the right to a de novo hearing before the referring court under Section 201.015 in writing before the start of a hearing conducted by the associate judge." Act of May 27, 2017, 85th Leg., ch. 912, 2017 Tex. Sess. Law. Serv. 513, 514 (current version TEX. FAM. CODE § 201.007(a)(16)). It is noteworthy that, in amending Section 201.007(a)(16), the Legislature made clear that the waiver must be in writing (not an oral waiver) and, as provided in Section 201.015(g), the written waiver must occur "before the start of a hearing conducted by an associate judge," reaffirming that the Legislature considers waiving the right to a de novo hearing *before* the start of the associate judge's hearing to be an important aspect of waiver.

Under the circumstances of this case, the associate judge was not statutorily authorized to sign a final order, and Winnie's nonsuit alone cannot convert the associate judge's report into a final order. The associate judge's report was just that, a report. *See* TEX. FAM. CODE § 201.011(a),(b) (providing that "associate judge's report may contain the associate judge's findings, conclusions, or recommendations" and "[a]fter a hearing, the associate judge shall provide the parties participating in the hearing notice of the substance of the associate judge's report"); *see also* TEX. FAM. CODE § 201.007(a)(10) (providing that associate judge may "recommend an order to be rendered in a case").

After receiving the associate judge's report, Winnie had three working days to request a de novo hearing before the referring court. *See id.* § 201.015(a). Even though Winnie did not request a de novo hearing, the associate judge's report did not automatically become a final order. *See In re Lausch*, 177 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding) (holding that associate judge's report was not final because it required approval of trial court and "contemplate[d] an order to follow"). The Family Code requires that, if a request for a de novo hearing before the referring court is not timely filed, the proposed order or judgment of the associate judge becomes the order or judgment of the referring court only on the referring court's signing the proposed order or judgment. TEX. FAM. CODE § 201.013(b). And, even when no party requests de

28

novo review, a referring court is permitted to adopt, modify, or reject an associate judge's proposed order, hear further evidence, or "recommit the matter to the associate judge for further proceedings." *Id.* § 201.014(a).[6]

In sum, the associate judge's authority to render final orders is strictly regulated by the Family Code. Here, the associate judge was not authorized to sign a final order. Because the referring court was required to sign the final order, and because any proposed order by the associate judge was subject to modification or rejection by the referring court, the associate judge's report cannot be considered an adjudication on the merits. Thus, the associate judge's report did not become a final order when Winnie nonsuited her claims and the referring court signed an order dismissing the case. Because it did not render a final order for purposes of Family Code Section 155.001(a), the Harris County court did not have continuing, exclusive jurisdiction over Winnie's claims.[7]

---

[6]  Family Code Sections 201.013 and 201.014 were also amended in 2017, but the amendments do not affect the issues in this appeal.

[7]  In his brief, Isa writes, in a parenthetical, "Alternatively, the Montgomery County court retained continuing and exclusive jurisdiction because the [mediated settlement agreement], which is binding and irrevocable, included provisions on property division, support, and child conservatorship." The MSA stated that the parties agreed that it represented final order, but it is undisputed that no final orders were rendered by the Montgomery County court before Winnie nonsuited the case. Thus, the Montgomery County court does not have exclusive continuing jurisdiction. *See* TEX. FAM. CODE § 155.001 (providing that court acquires continuing, exclusive jurisdiction "on the rendition of a final order").

29

## 2. *Uniform Child Custody Jurisdiction & Enforcement Act*

As alternate ground for his assertion that the Galveston County court never acquired subject-matter jurisdiction over the divorce action, Isa points to the temporary orders signed by the Harris County court in March 2012 regarding conservatorship of the couple's (then) two minor sons. The orders stated, "These Temporary Orders shall continue in force until the signing of the Final Decree of Divorce or until further order of this Court."

Winnie nonsuited the Harris County case on April 10, 2013, the same day she filed her Original Petition for Divorce in Galveston County. The presiding judge of the Harris County court signed an "Order on Notice of Non-Suit" on April 12, 2013, dismissing the case.

Winnie filed an amended petition in the Galveston suit on June 3, 2013. Both her original and amended divorce petitions requested temporary orders concerning the children. However, Winnie did not obtain any orders from the Galveston court pertaining to the children until the final divorce decree in June 2014.[8]

Isa asserts that the Galveston County court did not acquire subject-matter jurisdiction because, when the original petition was filed in Galveston, the Harris County temporary orders were still in place, even though Winnie had nonsuited the

_____

[8]     At that point, only the couple's youngest son, E.A., was under the age of 18. In June 2014, E.A. was 17.5 years old.

30

case. The Harris County court did not sign the order dismissing the case, based on the nonsuit, until two days after Winnie filed the original petition.

To support his argument, Isa cites Family Code Section 152.202, found in Chapter 152. *See* TEX. FAM. CODE § 152.202. Chapter 152 is the Uniform Child Custody Jurisdiction & Enforcement Act (UCCJEA), which "governs jurisdiction over child custody issues between Texas and other states." *Lesem v. Mouradian*, 445 S.W.3d 366, 372 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citing *In re Isquierdo*, 426 S.W.3d 128, 131 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding)).

Section 152.202 is found in Article 2 of the UCCJEA. "Article 2 of the UCCJEA specifically grants exclusive continuing, jurisdiction over child custody disputes to the state that made the initial custody determination and provides specific rules on how long this jurisdiction continues." *In re Forlenza*, 140 S.W.3d 373, 375 (Tex. 2004); *see also* TEX. FAM. CODE §§ 152.201, 152.202; *Razo v. Vargas*, 355 S.W.3d 866, 875 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (providing that, under UCCJEA, generally, court of state that makes initial child custody determination retains exclusive continuing jurisdiction over ongoing custody disputes).

Section 152.202(a) governs the duration of the Texas court's exclusive continuing jurisdiction. *In re Isquierdo*, 426 S.W.3d at 131. It provides that a

Texas court that has made an initial child custody determination, consistent with Section 152.201, has exclusive continuing jurisdiction over the determination until (1) a Texas court "determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent, have a significant connection" with Texas and that "substantial evidence is no longer available" in Texas "concerning the child's care, protection, training, and personal relationships" or (2) a Texas court or the court of another state "determines that the child, the child's parents, and any person acting as a parent do not presently reside in [Texas]." TEX. FAM. CODE § 152.202(a).

Here, we are not presented with the question of whether a Texas court vis-à-vis the court of another state has exclusive, continuing jurisdiction. Thus, Section 152.202 does not apply to determining subject-matter jurisdiction in this case and does not support the trial court's determination that it lacked subject-matter jurisdiction.

After considering the jurisdictional arguments, we hold that the Galveston County family law court had subject-matter jurisdiction over Winnie's divorce suit. The court erred when it determined that it did not have subject-matter jurisdiction and granted Isa's plea to the jurisdiction. *See Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) (stating that a plea to the jurisdiction seeks dismissal of case based on lack of subject-matter jurisdiction). The trial court's vacatur of the 2014

divorce decree and dismissal of the suit was the relief attendant to the granting of the plea and cannot be supported by the trial court's lack of subject-matter jurisdiction determination. To determine whether lack of personal jurisdiction can support the relief provided, we next turn to the other ground identified in the trial court's judgment as supporting vacatur and dismissal: lack of personal jurisdiction over Isa and IACL.

## B. Personal Jurisdiction

### 1. *Personal Jurisdiction over Isa*

In his motion for new trial, Isa asserted that service of process on him by publication had been ineffective. He claimed that Winnie had not used reasonable diligence to locate him for service. Isa asserted that Winnie had lied to the trial court in her affidavit supporting substituted service when she testified that she did not know Isa's location or how to find him. However, even if the trial court found that service by publication on Isa had been ineffective, such determination would not support the relief provided by the trial court, that is, it would not support dismissal of the suit. Isa's remedy for invalid service of process is the granting of a new trial, not dismissal of the case. *See In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012); *see also In re P. RJ E.*, 499 S.W.3d 571, 578 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (holding that service by publication on defendant father was invalid, reversing judgment as to father, and remanding for new trial); *cf.*

*Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 202–03 (Tex. 1985) (holding that curable defect in service of process does not defeat defendant's amenability to court's process and serves only to provide defendant with more time to answer).

### 2. *Personal Jurisdiction over IACL*

IACL also claimed that it had not been properly served with process. It raised this claim in its separately filed bill-of-review action docketed in the Galveston trial court under a separate cause number. IACL claimed that service had not been effective through the Secretary of State's Office because Winnie had provided an incorrect address for IACL. In its bill-of-review petition, IACL also claimed that it was not amendable to process because it lacked sufficient minimum contacts with Texas to be sued in this forum.

Before the hearing, Winnie also objected to the trial court's consideration of IACL's bill of review. At the beginning of the hearing, the trial court agreed that it would not hear IACL's separate bill-of-review action at that time. In any event, as discussed regarding Isa, IACL's remedy for lack of proper service would be a new trial, not dismissal of Winnie's suit. *See In re E.R.*, 385 S.W.3d at 563; *see also In re P. RJ E.*, 499 S.W.3d at 578.

With respect to IACL's claim that it lacked sufficient minimum contacts with Texas to be subject to in personam jurisdiction in the forum, the record does not reflect that the issue was before the trial court at the July 19, 2016 hearing on

Isa's motions. The record reflects that the trial court denied IACL's special appearance by written order on May 5, 2016. IACL then filed a petition for writ of mandamus in this Court, complaining that the trial court did not conduct a hearing on its special appearance and asserting that the trial court did not have personal jurisdiction over IACL. Thus, at the time of the July 19 hearing on Isa's motion for new trial and plea to the jurisdiction, IACL's special appearance had been denied and the related original proceeding was pending in this Court. No arguments were raised by IACL at the July 19 hearing requesting the trial court to reconsider its previously denied special appearance.[9] Nothing supports interpreting the trial court's recitation in its judgment, that it lacked personal jurisdiction over IACL, to be a determination that IACL was not amendable to process in Texas. To the contrary, that issue had previously been disposed of in the order denying IACL's special appearance.

---

[9] We note that, at the hearing on entry of judgment, on July 21, 2016, IACL's counsel requested the trial court to include a determination in the judgment that the court lacked personal jurisdiction over IACL. Winnie's counsel objected, stating, "I don't think that the evidence or the Court ever reached the issue of in personam jurisdiction of [IACL]. If I remember correctly, that goes with the bill of review; and all we were considering at the hearing was Isa Alwazzan['s] [motion and plea]." Later in the hearing, the trial court remarked that the judgment has "some extra language about personal jurisdiction that I really didn't allow them to argue too much [about.]" Although the trial court appeared to agree with Winnie that IACL's personal jurisdiction had not been part of the proceedings on Isa's plea to the jurisdiction and motion for new trial, the order nonetheless recites that the court lacked personal jurisdiction over IACL.

35

We hold that the trial court's determination in its judgment, that it lacked personal jurisdiction over Isa and IACL, does not support the trial court's dismissal of Winnie's case. Thus, neither lack of subject-matter jurisdiction nor lack of personal jurisdiction can support the relief provided by the trial court's judgment, that is, neither support vacatur of the 2014 divorce decree and dismissal of the case.

## C. Considering Independent, Alternate Grounds to Affirm Relief

In what we construe as a cross-point, Isa and IACL ("Appellees") assert that, even if the jurisdictional grounds on which the trial court provided relief do not support dismissal (as we have found), we may determine whether alternate grounds presented to the trial court support the relief awarded. Here, the relief awarded by the trial court was vacatur of the 2014 divorce decree and dismissal of Winnie's suit. On appeal, Appellees seek affirmance of the relief on several independent, alternate grounds that were presented to the trial court but not identified in the judgment as a basis for relief. Because Appellees do not seek greater relief than awarded by the judgment, but seek only affirmance of the vacatur and dismissal, we must address the alternate grounds offered to affirm the relief. *See City of Austin v. Whittington*, 384 S.W.3d 766, 789 (Tex. 2012) (holding that party may raise independent ground for obtaining same relief awarded in judgment as issue on appeal rather than pursuing a cross-appeal); *Dean v. Lafayette Place (Section*

*One) Council of Co–Owners, Inc.*, 999 S.W.2d 814, 818 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("The independent grounds for affirmance can be raised in a cross-point as long as the appellee is not requesting greater relief than that awarded by the trial court.").

**D.    90-day Residency Requirement**

As an alternate ground for relief, Appellees assert that they were entitled to vacatur and dismissal because Winnie did not satisfy the 90-day residency requirement found in Family Code Section 6.301, a mandatory provision that subjects suits to dismissal if not satisfied.

*1. Applicable Law*

The right to seek a divorce is a statutory right, and, as such, "the state has the right to determine who are entitled to use its courts for that purpose and upon what conditions they may do so."  *In re Green*, 385 S.W.3d 665, 669 (Tex. App.—San Antonio 2012, orig. proceeding).  Family Code section 6.301 provides,

> A suit for divorce may not be maintained in this state unless at the time the suit is filed either the petitioner or the respondent has been:
>
> (1)    a domiciliary of this state for the preceding six-month period; and
>
> (2)    a resident of the county in which the suit is filed for the preceding 90-day period.[10]

---

[10]    Winnie has never suggested that Isa was a resident of Galveston County.

TEX. FAM. CODE § 6.301.  "The public policy behind these requirements is to prevent forum shopping by divorce litigants."  *In re Milton*, 420 S.W.3d 245, 252 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding) (citing *Reynolds v. Reynolds*, 86 S.W.3d 272, 277 (Tex. App.—Austin 2002, no pet.); *see also Berry v. Berry*, 612 S.W.2d 213, 214 (Tex. Civ. App.—Beaumont 1980, writ dism'd) ("[I]t is readily apparent that Texas has not sought to cultivate the business of those . . . who may play fast and loose with findings of domicile.").

"Section 6.301 is not jurisdictional, but it controls a petitioner's right to sue for a divorce; it is a mandatory requirement that cannot be waived."  *In re Milton*, 420 S.W.3d at 252; *see In re Green*, 385 S.W.3d at 668 ("Although section 6.301 is not itself jurisdictional, it is akin to a jurisdictional provision because it controls a party's right to maintain suit for divorce and is a mandatory requirement that cannot be waived."); *McCaskill v. McCaskill*, 761 S.W.2d 470, 473 (Tex. App.—Corpus Christi 1988, writ denied) ("Though not jurisdictional, the residency requirement protects the interests of the State as well as the parties, and cannot be waived by the parties.").  Residency must be established as of the date the suit for divorce is filed; it is not enough that 90 days of residency will pass during the pendency of the divorce proceeding.  *In re Milton*, 420 S.W.3d at 252 (citing *In re Rowe*, 182 S.W.3d 424, 426 (Tex. App.—Eastland 2005, orig. proceeding)).

"Typically, when the residency requirements have not been met, the trial court abates the suit so that either the petitioner or the respondent can meet the residency requirements." *Id.*; *Reynolds*, 86 S.W.3d at 277 ("The failure of a divorce petition to properly allege residency renders the suit subject to abatement."). "Once a party files a plea in abatement, the trial court should abate the proceedings until at least one of the parties has completed the mandatory residency requirements." *Id.*; *see Oak v. Oak*, 814 S.W.2d 834, 838 (Tex. App.— Houston [14th Dist.] 1991, writ denied); *Svensen v. Svensen*, 629 S.W.2d 97, 98 (Tex. App.—Dallas 1981, no writ) ("[T]he proper remedy in sustaining a plea in abatement is not to dismiss but to retain the case on the docket, so that when the impediment to prosecution of the suit is removed it may be revived."); *see also Hoffman v. Hoffman*, 821 S.W.2d 3, 5–6 (Tex. App.—Fort Worth 1992, no writ) (holding that trial court should abate until petitioner meets residency requirements, at which point petitioner may file amended petition showing compliance with requirements).

Under Texas law, a person can have several residences. *Willig v. Diaz*, No. 01–15–00073–CV, 2016 WL 2955395, at *3 (Tex. App.—Houston [1st Dist.] May 19, 2016, no pet. (mem. op.) (citing *Snyder v. Pitts*, 241 S.W.2d 136, 138 (Tex. 1951)). Although the term "residence" has a variety of meanings, depending on its context, residence generally requires both physical presence and an intention to

remain. *Id.* (citing *Smith v. Bd. of Regents of the Univ. of Houston Sys.*, 874 S.W.2d 706, 712 (Tex. App.—Houston [1st Dist.] 1994, writ denied)). To be a resident, there must be an intent to establish a permanent domicile or home, and the intent must be accompanied by some act done in the execution of the intent. *Id.* (citing *Wilson v. Wilson*, 189 S.W.2d 212, 213 (Tex. Civ. App.—Fort Worth 1945, no writ)). For purposes of the Family Code, being a "resident of the county in which suit is filed" means an actual, physical, continuous living in the county of suit by the party, for the specified 90-day period, coupled with a good-faith intent to make that county home. *Id.* (citing *Cook v. Mayfield*, 886 S.W.2d 840, 842 (Tex. App.—Waco 1994, orig. proceeding)).

When the record indicates that neither party intends to reside in the county of suit, abating the suit will not cure a failure to meet the residency requirements; rather dismissal is the proper remedy. *See Green*, 385 S.W.3d at 670 ("Because neither party will ever meet the residency requirements, the impediment to the trial court going forward with the suit cannot be removed[,]" and dismissal is the proper remedy).

"The issue of residency is a question of fact for the trial court, and its finding will not be disturbed absent an abuse of discretion." *In re Lee-Cole*, No. 12-17-00179-CV, 2017 WL 3048488, at *2 (Tex. App.—Tyler July 19, 2017, no pet.)

(mem. op.) (citing *In re Marriage of Lai*, 333 S.W.3d 645, 648 (Tex. App.—Dallas 2009, no pet.)).

*2.      Analysis*

Among the trial court's post-sanctions findings of fact were the following:

27.    On July 19, 2016, Winnie Stacey testified that she did not reside in Galveston County 90 days before filing the April 10, 2013 [original petition].

28.    This Court also finds that other than Winnie Stacey's testimony, the only evidence before this Court concerning whether she resided in Galveston at any time before the June 19, 2014 Judgment was rendered, come from her statements in a job application to Tomball Ford in 2015 and an email in July 2014 [sic],[11] both of which indicate that she did not reside in Galveston at any time before she worked for Tomball Ford in 2015.

29.    Winnie Stacey did not present any competent evidence demonstrating that she was ever a resident in Galveston, including neither telephone bill, utility bills, mail addressed to her in Galveston, nor any other documentary proof of her residency in Galveston. I find that there is no credible evidence that Winnie Stacey was ever a resident of Galveston in 2013 and 2014 [the time period encompassing the filing of the April 10, 2013 original petition and the rendition of the June 2014 divorce decree].

Similarly, in the sanctions order, the trial court found,

---

[11]    In his declaration supporting his motion for new trial, Isa averred that Winnie had sent him an email in July 2013, not 2014, in which she stated that she still lived in the area where the couple had lived when they were together and that she only went to Galveston on the weekends.  Nonetheless, the email still provides support for the trial court's findings and contradicts Winnie's testimony that she had moved to Galveston in February 2013.

41

> Winnie Stacey Alwazzan admitted that she had not lived for 90 days prior to filing the Original Petition in Galveston County and therefore did not have a legal basis to assert venue in Galveston County.
>
> The Court hereby finds that Winnie Stacey Alwazzan never established residence in Galveston County at anytime [sic] before January 2015, based on all available documentary evidence, including her job application to Tomball Ford that lists her residences in Houston and Magnolia, Texas, as her only residence in the prior seven years, and her admission in an email that she was only present in Galveston on [the] weekend.

Although these findings were made in support of the sanctions award against Winnie, they are nonetheless findings of fact made by the trial court setting forth its determination with respect to whether Winnie met the 90-day residency requirement at any point either before the filing of the suit or while it was pending. The evidence cited by the trial court in support of these findings was evidence considered by the trial court during the July 19, 2016 hearing on Isa's motion for new trial and jurisdictional plea.

At the July 19 hearing, Isa offered Winnie's employment application from January 2015 for her current employer. In the application, Winnie listed her address as a Houston address. As part of the application process, Winnie had also filled out an authorization for a background check. The authorization asked Winnie to list her "addresses within the past seven years." She listed a Magnolia, Texas address, indicating that she had lived there from 2001 until 2010. The only other address she listed on the background check was her Houston address.

42

When asked why she had not listed Galveston as an address on the background check if, as she claimed, she resided there in 2013, Winnie responded, "I didn't see this within the past seven years [instruction] or I would have put my other addresses." Winnie also indicated that she did not list the Galveston address because she was unable to receive mail at the address even though she testified that it had a street address of 10811 San Luis Pass Road. She agreed that, by signing the authorization, she was representing to her future employer that her answers were true.

The trial court also considered the declaration attached to Isa's motion for new trial. In the declaration, Isa had attested that in July 2013, Winnie sent him an email stating that she was still living "in our old area" and that she only went to Galveston on the weekends.

The employment application and Isa's declaration provide some evidence to support the trial court's determination that Winnie was never a resident of Galveston County during 2013 or 2014. And the evidence contradicts Winnie's testimony that she moved to Galveston in February 2013.

Winnie's original petition was filed on April 10, 2013 and the Galveston divorce decree was signed in June 2014. The trial court's finding that Winnie did not reside in Galveston County in 2013 and 2014 necessitates a conclusion that she never satisfied Section 6.301's 90-day residency requirement.

In her brief, Winnie asserts, "[A] trial court errs in dismissing a divorce on the ground that the petition failed to establish completion of the residency requirement; instead, the case should be abated and retained on the court's docket until the residency requirement has been met." However, that was not feasible in this case. The trial court's findings, supported by the evidence, indicate that Winnie had misrepresented to the trial court at the June 2014 default hearing that she had been a resident of Galveston County for the required 90-day period. The trial court found that Winnie had never been a resident of Galveston County during the 90-day period before the filing of the suit nor at any time while the suit was pending before rendition of judgment. It was not a matter of abating the suit to permit Winnie to finish the 90-day residency period. In short, there was no way for Winnie to cure her failure to comply with the residency requirement because the trial court found that she had not been a resident during the relevant time periods.

On appeal, Winnie points out that, at the end of the hearing, the trial court made the following remarks:

> But I think ultimately where this case falls apart is that she admitted on the witness stand she moved here in February of 2013. The suit was filed on April the 10th. And let's say she moved here the 1st day of February, unless she moved here on or after April 2013, there was no venue. Venue was not proper. And, you know, the Rules of Law and Procedure are here to protect our due process and Constitutional rights, not to be abused and misused and to trample on rights and I think that's what was done here.

Winnie asserts that this shows that "the trial court had it in her mind that Winnie had only lived in Galveston for 60 or so days prior to filing for divorce in Galveston County." She claims that "the trial court wholly failed to consider Winnie's first amended petition, filed June 3, 2013, over 120 days after she had moved to Galveston." However, the trial court's remarks do not indicate that it definitively believed that Winnie had moved to Galveston in February 2013. And the trial court's later written findings show that, upon consideration of the evidence, the trial court did not believe that Winnie had ever resided in Galveston.

In her brief, Winnie also relies on *Svensen v. Svensen*, 629 S.W.2d 97 (Tex. App.—Dallas 1981, no writ). There, the case had been dismissed because the husband had been 5 days short of meeting the residency requirement when the trial court heard the wife's request to dismiss the suit, in part, based on the husband's failure to meet the residency requirement. *Id.* at 97.

In a motion for new trial, the husband demonstrated that, since the dismissal, he had satisfied the residency requirement and had filed an amended petition, claiming satisfaction of the residency requirement. *See id.* at 97–98. The court of appeals held it was error for the trial court not to reinstate the case on the motion for new trial. *Id.* at 98. The court also held that it had been error for the trial court to dismiss the case initially, when the husband had only five days left to satisfy the

residency requirement, without first abating the suit to allow the husband to cure the residency defect. *Id.*

Winnie claims, "[l]ike Svenson, by the time Winnie had filed her motion for new trial [in August 2016], there had been no doubt that the residency requirement had been satisfied." In making this claim, Winnie relies on her testimony that she moved to Galveston in February 2013. Winnie also points to the affidavits of her adult children, offered in support of her own motion for new trial, in which they stated that Winnie had resided in Galveston.[12] However, as the sole judge of the credibility of the witnesses, and in light of the conflicting evidence, the trial court was permitted to find that Winnie had never been a resident of Galveston County during the relevant periods. *See Willig*, 2016 WL 2955395, at *5. Thus, *Svenson* is inapposite to this case.

Finally, Winnie asserts that "the trial court also failed to consider that, for a period of time, there could have been more than one residence under Section 6.301." However, Winnie did not claim that she had two residences. She testified that she had moved to Galveston in February 2013, a claim rejected by the trial court in its findings.

Because the record supports the trial court's findings, and the findings support a conclusion that Winnie did not meet the mandatory 90-day residency

---

[12] It is unclear whether the trial court considered Winnie's August 2016 motion for new trial. No order on the motion appears in the record.

requirement, it was within the trial court's discretion to vacate the 2014 divorce decree and dismiss the case. *See In re Lai*, 333 S.W.3d at 648 (upholding trial court's dismissal of divorce, holding that trial court did not abuse its discretion because some evidence was presented to show neither spouse met section 6.301 residency requirement); *see also* TEX. FAM. CODE § 6.301(a). We hold that Winnie's failure to meet the 90-day residency requirement provides an independent ground to affirm the relief provided by the trial court: vacatur of the 2014 divorce decree and dismissal of the suit.[13] *See Dean*, 999 S.W.2d at 818 (affirming relief on different ground than identified by trial court in judgment).

---

[13] Winnie asserts that the only remedy available to Isa in the trial court was for the trial court to grant his Rule 329 motion for new trial. She contends that the trial court did not have plenary power to do anything else. We disagree. Rule of Civil Procedure 329, provides,

> In cases in which judgment has been rendered on service of process by publication, when the defendant has not appeared in person or by attorney of his own selection: (a) The court may grant a new trial upon petition of the defendant showing good cause, supported by affidavit, filed within two years after such judgment was signed. . . .

TEX. R. CIV. P. 329(a). The rule also provides, "If the motion is filed more than thirty days after the judgment was signed, the time period shall be computed pursuant to Rule 306a(7)." TEX. R. CIV. PROC. 329(d). Rule 306a(7) states, "With respect to a motion for new trial filed more than thirty days after the judgment was signed pursuant to Rule 329 when process has been served by publication, the periods provided by paragraph (1) shall be computed as if the judgment were signed on the date of filing the motion." TEX. R. CIV. PROC. 306a(7). Paragraph (1) provides, "The date of judgment or order is signed as shown of record shall determine the beginning of the periods prescribed by these rules for the court's plenary power to grant a new trial or to vacate, modify, correct or reform a judgment or order . . . . TEX. R. CIV. PROC. 306a(1). Rule 329b(e) states,

47

We sustain Appellees' cross-point. We sustain Winnie's first two issues to the extent that they challenge the jurisdictional determinations in the judgment, but we overrule Winnie's issues to the extent they challenge the alternate ground of deficient Section 6.301(a) residency, which supports the relief provided by the trial court.

## Sanctions

In her third issue, Winnie contends that the trial court abused its discretion in awarding sanctions. The trial court awarded sanctions against Winnie in the form of Appellees' trial and appellate attorneys' fees. The trial court based the sanctions award (1) on violations of Rule 13 of the Texas Rules of Civil Procedure; (2) on violations of Chapter 10 of the Texas Civil Practice and Remedies Code; and (3) on its inherent power to sanction. *See* TEX. CIV. PRAC. & REM. CODE §§ 10.001(1), 10.004(a); TEX. R. CIV. P. 13; *Phillips & Akers, P.C. v. Cornwell*, 927 S.W.2d 276, 280 (Tex. App.—Houston [1st Dist.] 1996, no writ). The trial court listed the factual and legal reasons for the sanctions in the sanctions order. At Winnie's

---

> If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first.

TEX. R. CIV. PROC. 329b(e). Thus, because Isa filed a motion for new trial on June 13, 2016, the trial court had plenary power on July 21 to vacate the judgment and to dismiss the suit.

request, the trial court separately filed findings of fact and conclusions of law in support of the sanctions.

## A.      Standard of Review & Applicable Legal Principles

Appellate courts review a trial court's imposition of sanctions under an abuse of discretion standard. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014) (sanctions under Chapter 10); *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007) (sanctions under Rule 13); *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (sanctions under trial court's inherent power).

A trial court abuses its discretion if it acts without reference to guiding rules and principles of law to such an extent that its ruling is arbitrary or unreasonable. *Nath*, 446 S.W.3d at 361. However, we cannot say a trial court abused its discretion simply because it decided a matter differently than we might have in a similar circumstance. *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011). Moreover, if some evidence supports the trial court's decision, we will not hold it abused its discretion. *Nath*, 446 S.W.3d at 361.

In reviewing a sanctions order for an abuse of discretion, we are not bound by a trial court's findings of fact and conclusions of law, if any. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006). Rather, we must conduct an independent review of the entire record to determine whether there has been an abuse of discretion. *Id.* The purpose of findings made following the

imposition of sanctions is to assist the appellate court in its analysis, assure judicial deliberation, and enhance the deterrent effect of the sanctions order itself. *Clark v. Bres*, 217 S.W.3d 501, 513 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

Rule of Civil Procedure 13 provides that a person who signs a pleading certifies that (1) he has read the pleading and (2) to the best of his knowledge, information and belief formed after reasonable inquiry, the pleading is not (3) groundless and brought in bad faith or brought for purposes of harassment. TEX. R. CIV. P. 13. To award sanctions under Rule 13, the trial court must conduct an evidentiary hearing and the movant must present evidence at that hearing to show a pleading was groundless and brought in bad faith or for purposes of harassment. *Cherry Petersen Landry Albert LLP v. Cruz*, 443 S.W.3d 441, 453 (Tex. App.— Dallas 2014, pet. denied).

Section 10.004(a) of Chapter 10 provides that if a court determines that a person has signed a pleading or motion in violation of section 10.001, the court may impose a sanction on the party. TEX. CIV. PRAC. & REM. CODE § 10.004(a). Section 10.001(1) provides that a sanctionable pleading includes a pleading that is presented for "any improper purposes." *Id.* § 10.001(1). "[A] trial court has inherent power to sanction bad faith conduct during the course of litigation that interferes with the administration of justice or the preservation of the court's dignity and integrity." *Phillips & Akers*, 927 S.W.2d at 280.

**B.**     **Sanctionable Conduct**

Among the sanctionable conduct identified in the trial court's order was the following:

3. Signature by counsel and [Winnie] on the Original Petition filed in Galveston County without legal basis for venue when neither the petitioner nor respondents resided in Galveston County for ninety days prior to the filing;

. . . .

8. Signature by [Winnie] on an affidavit in support of the Original Petition and again on second affidavit in support of the Amended Petition, filed in Galveston County, asserting that she did not know how to reach or contact her husband, though she had been communicating with her husband through counsel since 2011, knew her children were in regular contact with her husband, and had consented to allow her minor child to fly to London to visit her husband one month prior to the Galveston trial;

. . . .

The Court also found as follows:

The actions of Winnie Stacey Alwazzan caused [Isa and IACL] to necessarily expend resources in defending against the enforcement of the June 2014 Default Judgment. The Petitioner and her counsels' purpose was to obtain a large money judgment against a party that had already been adjudicated not liable to [Winnie] by another court of competent jurisdiction on the same claims, without that party knowing of, or being able to defend against, the Galveston suit. The Court finds, this conduct demonstrates an improper purpose.

In its separately filed findings of fact and conclusions of law, the trial court found that "it was inappropriate forum shopping, a violation of the rules of Texas Procedure, a violation of the duties of candor and obligations imposed under

51

[Chapter] 10 and Rule 13, for [Winnie and her attorneys], . . . to file the Original Galveston Petition in this Court on April 10, 2013, and proceed in this Court as they did, for the following reasons . . . ." The trial court then detailed, in 36 findings of fact the history of the Montgomery, Harris, and Galveston County divorce suits filed by Winnie. Among those findings were the following:

25. Winnie Stacey's signed affidavit in support of the Original Galveston Petition, stated, in effect, that she did not know how to contact Isa Alwazzan, when in fact she and her attorneys knew that Isa was represented by an attorney in the Harris County action on the very day she filed the Original Galveston Petition, April 10, 2013.

26. Winnie Stacey and her attorneys knew that Winnie's children had been communicating with Isa Alwazzan since he left Texas, in April 2012.

27. On July 19, 2016, Winnie Stacey testified that she did not reside in Galveston County 90 days before filing the April 10, 2013 [petition].

28. This Court also finds that other than Winnie Stacey's testimony, the only evidence before this Court concerning whether she resided in Galveston at any time before the June 19, 2014 Judgment was rendered, come from her statements in a job application to Tomball Ford in 2015 and an email in July 2014 [sic], both of which indicate that she did not reside in Galveston at any time before she worked for Tomball Ford in 2015.

29. Winnie Stacey did not present any competent evidence demonstrating that she was ever a resident in Galveston, including neither telephone bill, utility bills, mail addressed to her in Galveston, nor any other documentary proof of her residency in Galveston. I find that there is no credible evidence that Winnie Stacey was ever a resident of Galveston in 2013 and 2014 [the time period encompassing the filing of the April 10, 2013 original petition and the rendition of the June 19, 2014 default judgment].

52

30. When the Original Galveston Petition was filed asserting venue in Galveston, on April 10, 2013, Winnie Stacy and her counsel changed the typical pleading language as a basis for venue in the divorce petitions to obscure the fact that she had no basis for venue in Galveston at that time.

. . . .

40. [Winnie] attempted to have the Texas Secretary of State serve process upon IACL to an address that was different than the address that [her attorney] had certified was IACL's last known address.

41. [Winnie] sought to have Isa served by publication on the grounds that they did not know how to contact him. [Winnie] moved for Citation by Publication on May 23, 2013 pursuant to TRCP 109 and service under TRCP 106, supported by her affidavit that stated she had no other way to get in touch with Isa Alwazzan. However, Winnie Stacey and Isa's children were in regular contact with Isa since April 2012, the children had taken a trip to see their father in 2013 and Isa Alwazzan had been represented by counsel in the Harris County divorce action at least until May 10, 2013 (which was 30 days after they filed the non-suit), Winnie Stacey was in regular use of an email address in communicating with Isa and had reason to know through her children that Isa was receiving and reading her emails, and Winnie Stacey knew several email addresses and at least one physical address, for contacts in Bahrain where she believed she would be able to find Isa. [Winnie] did not exercise due diligence to determine Isa's location, and instead concealed other means of communicating with him and perhaps serving him, from the Court, and the Court did not confirm whether [Winnie] had performed due diligence. Winnie Stacey falsely testified in the Galveston default trial in June 2014 that she had no way of contacting Isa and did not know how to find him.

## C.     Analysis

Winnie asserts that the trial court abused its discretion in awarding sanctions because it "awarded sanctions based on the same faulty reasoning that it employed

in improperly granting the erroneous plea to the jurisdiction." Winnie is correct that the trial court indicated in its sanctions order that Winnie's conduct of filing the Galveston suit, when the underlying facts showed that the court lacked subject-matter jurisdiction, was sanctionable conduct. Winnie asserts that, because the trial court incorrectly dismissed the case based on jurisdictional grounds, those same grounds cannot support sanctions.

Winnie also complains that, during the three-day sanctions hearing, the trial court had agreed that "a host of issues," including issues relating to property division and whether the court had personal jurisdiction over IACL, would not be considered in assessing sanctions. Winnie points out that the trial court indicated, during the hearing, that "the real issue[s]" were whether "it was proper to go from county to county" and whether service of process was effectuated in an appropriate manner on Isa and on IACL. She asserts that, despite this discussion, the trial court admitted evidence and made findings, supportive of the sanctions, related to the issue of whether the trial court had personal jurisdiction over IACL.

However, in making these assertions, Winnie does not recognize that we may uphold the trial court's sanctions award if any of the sanctionable conduct in the order has support in the record. *See Chevron Phillips Chem. Co. P.P. v. Kingwood Crossroads*, L.P., 346 S.W.3d 37, 74 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (explaining that when party seeking sanctions asserted that

opposing party violated a discovery order in ten ways, sanctions would be upheld if the record supported any of the alleged violations) (citing *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006)); *Bradt v. Sebek*, 14 S.W.3d 756, 764 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) ("[A] trial court's Rule 13 Sanction Order must be upheld if any of the facts set forth by the court supports the sanctions."); *Monroe v. Grider*, 884 S.W.2d 811, 816 n.3, 819 (Tex. App.—Dallas 1994, writ denied) (upholding sanctions when five of seven fact findings supported the sanctions).   Thus, even if the trial court made some findings of non-sanctionable conduct, the sanctions will nonetheless be upheld if they are based on other findings of sanctionable conduct supported in the record.  Here, the trial court made findings that uphold the sanctions.

As discussed, Winnie filed her affidavit in support of her request to serve Isa by publication.  In it, she testified that she did not know Isa's whereabouts or how to contact him.  The trial court found Winnie's statements in the affidavit to be false.  With respect to the evidentiary support for this finding, a review of the record reveals that Winnie knew the statements were false when she made them because she knew how to find Isa and how to contact him.

Winnie claims that the evidence contradicts the trial court's finding because evidence was presented indicating that Isa's address was unknown, not only to his attorneys, but also to his children.  However, the court found, as supported by the

evidence, that Winnie falsely stated that she did not know how to contact him. The evidence showed that she had been emailing him over the years and that she knew from her children that Isa received and read her emails. The evidence also showed that, around the time she signed the affidavit, her children, including her minor son, traveled overseas to visit Isa. The evidence further showed that, when the Galveston suit was filed, Winnie knew that Isa had been represented by retained counsel in the Houston case, which she had nonsuited that same day. The evidence showed that Winnie knew IACL's address and that correspondence could be sent there to be forwarded to Isa. In addition, as previously discussed, the evidence supports the trial court's finding that Winnie made misleading statements in her pleadings regarding her residency in Galveston. Winnie's false statements in her affidavit and in her petition about her residency are, at a minimum, sufficient to support Rule 13 sanctions. *See Nath*, 446 S.W.3d at 362 ("Rule 13 provides that pleadings that are groundless and in bad faith, intended to harass, or false when made are . . . sanctionable") (citing TEX. R. CIV. P. 13).

Winnie also complains that she, a non-attorney, should not be sanctioned for her attorneys' conduct. However, under Rule 13, sanctions may be imposed on a represented party. *See* TEX. R. CIV. P. 13. And the findings discussed *supra* are false statements directly attributable to Winnie and required no legal training to know were false.

In addition, Winnie also claims that the sanctions cannot be upheld based on the trial court's inherent power to sanction because the trial court did not "make findings and cite evidence that [her] conduct 'significantly interfered with the one of the court's core judicial functions.'" *See Sprague v. Sprague*, 363 S.W. 3d 788, 803 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). However, the trial court's imposition of sanctions need only be supported by one legal bases to be affirmed. *See Ketterman v. Tex. Dep't of Family & Protective Servs.*, No. 01–12–00883–CV, 2014 WL 7473881, at *9 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, no. pet.) (mem. op.); *Zeifman v. Nowlin*, 322 S.W.3d 804, 809 (Tex. App.—Austin 2010, no pet.). Here, the sanctions are supported by Rule 13; that is all that is needed for affirmance. *See Zeifman*, 322 S.W.3d at 809 ("Because we affirm the award of sanctions [under Rule 13], we need not address [the appellant's issues] challenging the imposition of sanctions pursuant to chapter 10 of the civil practice and remedies code or the court's inherent power.").

Winnie further complains that the trial court erred by awarding Isa and IACL attorney's fees as sanctions for this appeal and for any petition she files with the Supreme Court of Texas without conditioning the award on her failure to obtain relief in either court. We agree with Winnie that this was error. *See In re Ford Motor Co.*, 988 S.W.2d 714, 718, 722 (Tex. 1998) (concluding that, because sanctions award ordered Ford to pay $25,000 in attorney's fees if Ford sought

57

mandamus review of sanctions order and was not conditioned on Ford's failure to obtain relief, it effectively was a monetary penalty against Ford for exercising its legal rights). The part of the judgment awarding appellate attorney's fees as sanctions should be modified to be conditioned on Winnie's failure to obtain relief in this Court and in the supreme court. *See Marcus v. Smith*, 313 S.W.3d 408, 418–19 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (modifying court's order to make appellate attorney's fees contingent on successful appeal).

Finally, Winnie asserts that, because she and Isa are still married, the sanctions award constitutes "an impermissible allocation of liability against the community." We disagree.

Texas courts have long held that a spouse may be liable for the attorneys' fees of his or her spouse when a divorce suit is dismissed, and no final divorce decree is rendered. In *Roberts v. Roberts*, the Supreme Court of Texas held the wife could recover her attorney's fees from her estranged husband after their divorce action was dismissed because he did not meet the one-year state residency requirement. 192 S.W.2d 774, 777 (Tex. 1946). And, in *In the Matter of the Marriage of Parr*, the court determined that the husband should pay the wife's attorney's fees after the divorce action was dismissed for want of prosecution. 543 S.W.2d 433, 435 (Tex. Civ. App.—Corpus Christi 1976, no writ). In addition, the court in *Varn v. Varn* held that the husband should pay the wife's attorneys' fees

after he voluntarily dismissed the divorce suit.  125 S.W. 639, 642 (Tex. Civ. App. 1910, no writ).  Moreover, Family Code Section 6.708(c) provides, "In a suit for dissolution of a marriage, the court may award reasonable attorney's fees and expenses."  TEX. FAM. CODE § 6.708(c).  Thus, the attorneys' fees as sanctions are not improper under the circumstances.

We sustain Winnie's third issue with respect to her complaint that the award of appellate attorneys' fees as sanctions were not properly conditioned on the outcome of the appeals' process.  We otherwise overrule Winnie's third issue.

**Conclusion**

We modify the trial court's judgment to delete any reference (1) to the plea to the jurisdiction, (2) to subject-matter jurisdiction, (3) to personal jurisdiction, and (4) to the indication that the June 19, 2014 Reformed Final Decree of Divorce is void. We further modify the judgment to add that the June 19, 2014 Reformed Final Decree of Divorce is vacated and the suit is dismissed based on Winnie's failure to meet the 90-day residency requirement of Family Code Section 6.301(a). Finally, we modify the trial court's judgment to condition the award of attorneys' fees as sanctions for appeal to this Court on Winnie's failure to prevail here and the award of attorneys' fees as sanctions for petition to the Supreme Court of Texas on Winnie's failure to prevail in the supreme court. The judgment of the trial court is affirmed as modified.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Keyes and Higley.

Keyes, J., dissenting.

60